6 June 2000

No. 2--99--0730

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

In re
 ESTATE OF ROWENA G. ) Appeal from the Circuit Court

FERGUSON, Deceased  ) of Winnebago County.

  ) 

(Keith O. Ferguson, Ex'r      ) 

of the Estate of Clark M.  )

Ferguson, Deceased,  ) No. 96--P--539

Intervening Petitioner-  )

Appellant, v. Russell Moore  )

and Kenneth Moore, Co-ex'rs  ) 

of the Estate of      ) Honorable

Rowena G. Ferguson, Deceased,  ) Richard W. Vidal,

Respondents-Appellees).  ) Judge, Presiding.

_________________________________________________________________

JUSTICE RAPP delivered the opinion of the court:

Keith O. Ferguson, executor of the estate of Clark M. Ferguson (Clark's Estate), timely appeals from an order prohibiting the withdrawal of will renunciation and spousal award waivers executed in favor of the estate of Rowena G. Ferguson (Rowena's Estate).  Clark's Estate maintains that Clark Ferguson rightfully withdrew his waivers because they were executed under a mistake of fact.  Therefore, according to Clark's Estate, the trial court's factual findings to the contrary are against the manifest weight of the evidence.  We disagree and affirm.

Upon the completion of the briefing schedule, Rowena's Estate moved to strike portions of Clark's Estate's opening and reply briefs for failing set forth the proper standard of review.  We ordered the motion taken with the case.  After careful consideration, we find the deficiencies in Clark's Estate's briefs minor.  We deny the motion to strike.

I. FACTS

The facts relevant to this appeal are as follows.  Rowena Ferguson died on October 1, 1996.  At the time of her death, Rowena was married to Clark Ferguson.  The couple lived in Lena, Illinois.  Rowena was survived by numerous children, all from a previous marriage.  Shortly after Rowena's death, Clark moved to an assisted care living facility in Arkansas to be near his daughter, Nancy Veach.  Nancy and her brother Keith Ferguson were Clark's children from a previous marriage.

Rowena left a will with two codicils that effectively left Clark nothing.  Under the will, Rowena appointed two of her sons, Russell and Kenneth Moore, as co-executors.  The will was admitted to probate and an order of heirship was filed on November 14, 1996.  The order of heirship did not list Clark as an heir even though the proof of heirship acknowledged Clark as Rowena's surviving spouse.  Clark was not provided written notice of the probate proceedings.  However, according to John Vogt, one of the attorneys for Rowena's Estate, shortly after Rowena's death Clark was orally informed of the pendency of the estate and counseled as to his statutory rights.  

In August 1997, Keith visited Clark in Arkansas.  During the visit, Keith "thoroughly" reviewed Rowena's will and discussed, line by line, the inventory of assets in Rowena's estate with Clark.  Keith also obtained a special power of attorney from Clark.  

On September 4, 1997, Keith, acting on behalf of Clark, petitioned to intervene in the proceedings.  The petition sought to vacate any orders issued due to the failure of Rowena's Estate to properly notify Clark of the proceedings.  The trial court granted intervention and stayed the proceedings until further order of the court.  However, none of the previously issued orders were vacated.

On October 8, 1997, Clark executed a waiver of his statutory surviving spouse award and a waiver and relinquishment of his right to renounce Rowena's will.  In addition, Clark revoked Keith's special power of attorney.  On October 9, 1997, Keith, purportedly acting under the power of attorney, filed a renunciation of Rowena's will on behalf of Clark.  On October 23, 1997, Rowena's Estate moved to strike the renunciation based upon the waivers executed by Clark.  On November 18, 1997, Keith, again purportedly acting on behalf of Clark, filed a responsive pleading to which were attached two documents signed by Clark purportedly withdrawing the waivers.  Clark died in Arkansas on January 30, 1998, and his estate was substituted as the intervening party, with Keith serving as executor.

Rowena's Estate unsuccessfully moved for summary judgment.  Relying on 
In re Estate of Donovan
, 409 Ill. 195 (1951), the trial court held that the factual question of whether Clark had "good cause" to withdraw the waivers needed to be resolved at an evidentiary hearing.  The hearing was held in January 1999.

At the hearing, Curtis D. Clements, Clark's Arkansas attorney, testified that he first met with Clark on September 16, 1997. Clark's daughter, Nancy, and her husband were also present at the meeting.  Clements testified that he found Clark to be alert and of sound mind.  Clements briefly reviewed a series of documents that Clark had received from attorney Vogt.  According to Clements, there was no estate inventory among the series of documents.

Clements next met with Clark on October 8, 1997.  Again, Clark was accompanied by relatives.  At this second meeting, Clements discussed the series of documents that Clark had brought to the first meeting and reviewed other insignificant documents received in the interim.  Additionally, Clements reviewed with Clark Illinois law with respect to spousal awards and will renunciations.  Clements showed Clark the final accounting of Rowena's Estate valuing the estate at approximately $240,000, and Clements reviewed with Clark each item on the accounting, line by line.  Clements testified that, after reviewing the accounting, Clark felt that it sufficiently apprised him of the assets contained in Rowena's estate.  Clements counseled Clark on the legal ramifications of waiving his spousal award and his right to renounce the will.  Clark nevertheless executed the waivers and, at the same time, revoked Keith's special power of attorney.  Among other things, the waiver of the right to renounce the will stated that Clark had seen the estate inventory and that he was waiving any objection to insufficient notice.  Clark indicated to Clements that his intention for revoking the special power of attorney and executing the waivers was that he felt Keith was trying take assets belonging to Rowena.  Clark wanted his assets to remain his and Rowena's assets to remain hers.  Again, Clements noted that Clark was alert and seemed to have all his faculties.  According to Clements, Clark fully understood the consequences of his actions.   

Late in October 1997, Clements received a phone call from Keith's Illinois attorney regarding additional information about some of the assets in Rowena's estate.  Keith believed that some of the assets listed in Rowena's estate were actually Clark's premarital property.  Keith's attorney sent documentation to Clements, including an itemized inventory of Rowena's estate listing certain certificates of deposit (CDs) totaling $90,000, tax returns identifying income from the CDs in question, filed prior to Clark and Rowena's marriage, and bank records pertaining to the CDs.  The bank records revealed that in 1995 Clark transferred the CDs to Rowena.  At the time of Rowena's death, the CDs were in her name only.  

Clements again met with Clark to discuss the new information.  At the meeting, Clements reviewed the estate inventory with Clark, and Clark told Clements that at one time the CDs in Rowena's estate had belonged to him.  Clark knew the source of the CD funds but did not remember transferring the CDs to Rowena.  However, Clark identified his signature on the transfer documents and thus conceded to Clements that he must have executed the transfers.  No testimony was presented indicating that the transfers were involuntary.  Clements testified that, because of the substantial amount of money involved, Clark expressed a desire to exercise his statutory probate rights and to withdraw his waivers.  Clements advised Clark that he was undoing a decision that was made after lengthy consultation.  Nevertheless, Clark attempted to withdraw the waivers.

Keith testified that he had handled most of his father's records since before his mother, Inez, died in 1985 until after Clark's marriage to Rowena in 1988.  Keith identified Clark's 1987 and 1988 tax returns that reported income from the CDs listed in Rowena's estate.  Much of the rest of Keith's remaining testimony, regarding Clark's intentions with respect to the CD funds, was introduced by way of an offer of proof because the trial court ruled that the testimony was barred by the Dead-Man's Act (see 735 ILCS 5/8--201 (West 1998)).

After the hearing, the trial court had each party submit posttrial briefs and written closing arguments.  The trial court then issued a written memorandum of decision in which it found:

"The co-executor has met his burden in proofing [
sic
] that there was full disclosure of [Rowena's] estate at the time of the waiver transactions.  Clark had every opportunity to review the documentation in question.  The assets at issue were transferred in 1995 so Clark could hardly say that he was not aware of that circumstance.  Further, once that transfer of assets was made, there is a denotive [
sic
] intent which is presumed and nothing has been presented to rebut that.  Attorney Ferguson [
sic
] reviewed the asset list line-by-line with his client.  (Note: Defendant's Exhibits #1 and #2)

If Clark, in fact, had the intent for Rowena to inherit that property which was her's [
sic
], the CDs in question were in fact her's [
sic
] and his intent was realized.  To suggest that he intends to change his mind three years after transferring those assets does not constitute good cause.  He clearly acknowledged transferring the assets to Rowena, and there is no fraudulent aspect to that transaction.

***

Accordingly, the Court finds that there is no mistake of fact or of law which affected Clark at the time he executed the waivers.  The Court finds that there was full disclosure of the assets, and that all the assets involved were in Rowena's name, including the CDs."

The trial court then granted the co-executors leave to distribute Rowena's estate.  Following the entry of a formal order, Clark's Estate timely appealed and the distribution of Rowena's estate was stayed pending the outcome of the appeal.

II. DISCUSSION

The basic issue presented in this case is straightforward.  We are called upon to decide under what circumstances a party may withdraw a waiver of statutory probate rights.  

The trial court and the parties in this case believe that the issue is controlled by the "good cause" standard mentioned in 
Donovan
, 409 Ill. 195 (1951).  We disagree but nonetheless affirm the judgment of the trial court because a reviewing court may affirm a trial court on any ground found in the record regardless of the basis for the trial court's decision or the accuracy of its reasoning.  
Aboufariss v. City of De Kalb
, 305 Ill. App. 3d 1054, 1058 (1999).  A lower court's judgment, not its reasoning, is the crux of appellate review.  
Aboufariss
, 305 Ill. App. 3d at 1058.  

In 
Donovan
, a surviving husband renounced the will of his deceased wife.  The will appointed the husband as a co-executor of the estate.  Despite the husband's renunciation, he continued to act as a co-executor.  The other devisees objected to the husband's renunciation, arguing that it was inconsistent for a surviving spouse to renounce a will and, at the same time, act as an executor under the will.  The supreme court framed the issue as whether the surviving husband, by continuing to act as a co-executor in the face of his renunciation, waived and abandoned his renunciation.  The supreme court stated that there must be a showing of good cause in order to have a renunciation recalled or set aside.  
Donovan
, 409 Ill. at 203.  According to the court, a showing of good cause requires evidence that the surviving spouse "was mistaken and misapprehended his or her legal rights and the legal effect of the renunciation, no rights of innocent third parties having intervened."  
Donovan
, 409 Ill. at 203.  The
 court noted, however, that the surviving spouse did not seek to set aside his renunciation (
Donovan
, 409 Ill. at 203), so there was no reason to apply the "good faith" standard.  The court held that the renunciation was valid despite the surviving spouse continuing to act as a co-executor of the estate.  
Donovan
, 409 Ill. at 207.  

The issue presented in 
Donovan
 is fundamentally different from the issue presented in this case.  
Donovan
 dealt with the circumstances under which the exercise of a statutory right is considered abandoned.  
Donovan
 did not address the circumstances under which the withdrawal of a waiver of a statutory right is effective.  While this is a subtle difference, it is also an important difference.  The "good cause" standard mentioned in 
Donovan
 is insufficient in itself to justify withdrawing a waiver.  We hold that the standard required for withdrawing a waiver of probate rights is the same as that required for withdrawing waivers of other known rights.

Individuals generally may waive substantive rules of law, statutory rights, and even constitutional rights enacted for their benefit (
Raimondo v. Kiley
, 172 Ill. App. 3d 217, 224-25 (1988)), so long as the waiver is knowing, voluntary, and intentional (
Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.
, 275 Ill. App. 3d 452, 462 (1995)).  A waiver is permanent and cannot be withdrawn (
City of Chicago v. Michigan Beach Housing Cooperative
, 242 Ill. App. 3d 636, 650 (1993)), unless the waiving party unequivocally shows that the waiver was unknowing, involuntary, or unintentional. 
 For example, a waiver may be withdrawn where the waiving party shows that the waiver was given under mistake or misapprehension of a material fact, or where the waiver resulted from coercion or another party's fraudulent misrepresentations.  See
 
In re Estate of Lightner
, 81 Ill. App. 2d 263 (1967).  Whether a waiver may be withdrawn is generally a question of fact.  See, 
e.g.
, 
Michigan Beach Housing
, 242 Ill. App. 3d at 649.

In 
Lightner
, the court held that an agreement between a surviving spouse and legatees that effectively waived the surviving spouse's rights to renounce the will or take a spousal award 
was void.  
Lightner
, 81 Ill. App. 2d at 273-74.  The 
Lightner
 court based its holding on the fact that at no time was the surviving spouse advised of, nor did he have knowledge of, his statutory probate rights.  The court also found that the surviving spouse was never given a copy of the will and that the will was not presented to him at the time he signed the agreement.  The surviving spouse also had severely impaired hearing and sight and had no reason to mistrust the appointed executor when the executor read the will to him.  The evidence, however, indicated that the executor read only parts of the will to the surviving spouse.  As a result, the court found that the surviving spouse was unaware that valuable real estate interests were subject to the waiver agreement.  The 
Lightner
 court, in essence, found that the executor had breached his fiduciary duty and that the surviving spouse was coerced by the executor's breach and was operating under a misapprehension and mistake of material fact at the time he signed the agreement.  
Lightner
, 81 Ill. App. 2d at 274-77.  

Here, Clark's Estate argues that the facts in 
Lightner
 closely mirror the facts in this case and, therefore, the factual findings that formed the basis for the trial court's denial of leave to withdraw Clark's waivers are erroneous.  We disagree. 

A trial court's factual findings are accorded great weight on appeal.  
Suburban Bank v. Bousis
, 144 Ill. 2d 51, 63 (1991).  The standard of review applied in a challenge to a trial court's factual findings is that a ruling turning upon the factual findings will not be disturbed unless the record shows that the factual findings are against the manifest weight of the evidence.  
In re Barry B.
, 295 Ill. App. 3d 1080, 1085 (1998); see also 
Lightner
, 81 Ill. App. 2d at 276.  This means that the complaining party must establish clear, plain, and undisputable error in the factual findings.  
Barry B.
, 295 Ill. App. 3d at 1085.  In other words, the complaining party must show that the opposite conclusion from that reached by the trial court is clearly evident from the facts presented in the record.  
Brazas v. Ramsey
, 291 Ill. App. 3d 104, 109 (1997).  Clark's Estate has failed to meet this heavy burden.

Here, after a hearing on the merits, the trial court found that Clark did not have "good cause" to withdraw his waivers.  In our view, the 
Donovan
 "good cause" standard as applied in the context of waivers is simply a determination of the waiving party's knowledge.  Thus, in finding that there was not good cause to withdraw the waivers, the trial court simply determined that Clark knowingly executed the waivers.

The evidence presented in the record is not contrary to the trial court's factual findings.  There is no dispute that, prior to signing the waivers, Clark consulted at length with his attorney and his relatives.  Clark was advised of his legal rights under the will.  Clark's attorney reviewed with Clark the accounting of Rowena's estate, line by line.  Moreover, in August 1997, Keith "thoroughly" reviewed with Clark the inventory of Rowena's estate.  Clark's Estate acknowledges in its reply brief that the inventory identified the CDs in question.   Nevertheless, in the face of being informed of the CDs, Clark executed the waivers in October 1997.  Also, Clark's waiver of his right to renounce the will acknowledged that he had seen the inventory of Rowena's estate prior to signing the waivers.

The waivers also stated that Clark was aware of the error in failing to provide him with notice of the probate proceeding but, nonetheless, he acquiesced in the proposed distribution of the estate.  Clark waived objection to the insufficiency of notice. Though Clark was of advanced age, there is no dispute that he was of sound mind at the time he executed the waivers.  According to Clark's attorney, Clark fully understood the consequences of signing the waivers.  Finally, Clark conceded that he signed the documents transferring the CDs to Rowena.  Nothing in the record indicates any error in the trial court's determination that there was donative intent by Clark to transfer the CDs to Rowena and that there was no fraud involved in those transactions.  There is no evidence in the record indicating that Clark was coerced into signing the waivers or that he unintentionally signed the waivers.  The record reveals that Clark knowingly, intentionally, and voluntarily waived his statutory probate rights with respect to Rowena's will.  The trial court's factual findings simply are not against the manifest weight of the evidence. 

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

GEIGER and THOMAS, JJ., concur.