No. 3--00--0647

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 2001

THE DEPARTMENT OF PUBLIC AID, ) Appeal from the Circuit Court

ex
 
rel.
 TAMARA ALLEN, ) of the 9th Judicial Circuit,

 ) McDonough County, Illinois

Petitioner-Appellant, ) 

 )

v. ) No. AO--F--26

 ) 

FRED DIXSON, ) Honorable

                                ) Patricia A. Walton

Respondent-Appellee. ) Judge, Presiding

_________________________________________________________________

JUSTICE BRESLIN delivered the opinion of the Court:

_________________________________________________________________

Fred Dixson executed a written acknowledgment of paternity admitting that he was the biological father of Fred Dixson, Jr.  However, when Dixson was subsequently faced with the prospect of paying child support and providing health insurance for Fred Jr., he moved for genetic testing to determine whether Fred Jr. was his child.  The judge granted the motion and ordered testing at the State’s expense.  The State filed this interlocutory appeal, and we reverse.

The following provisions of the Illinois Parentage Act of 1984 (the Act) (750 ILCS 45/1 
et
 
seq.
 (West 1998)) govern this appeal.

"§ 5.  Presumption of Paternity.

(a) A man is presumed to be the natural father of a child if:

* * *

(3) he and the child’s natural mother have signed an acknowledgment of paternity in accordance with rules adopted by the Illinois Department of Public Aid ***[.]

***

(b) *** A presumption under subdivision (a)(3) or (a)(4) is conclusive, unless the acknowledgment of parentage is rescinded *** upon the earlier of:

(1) 60 days after the date the acknowledgment of parentage is signed, or

(2) the date of an administrative or judicial proceeding relating to the child (including a proceeding to establish a support order) in which the signatory is a party[.]"  750 ILCS 45/5(a)(3), (b)(1) through (2) 
(West 1998).

"§ 6.  Establishment of Parent and Child Relationship by Consent of the Parties.

(a) A parent and child relationship may be established voluntarily by the signing and witnessing of a voluntary acknowledgment of parentage ***. ***

(b) Notwithstanding any other provisions of this Act, paternity established in accordance with subsection (a) has the full force and effect of a judgment entered under this Act and serves as a basis for seeking a child support order without any further proceedings to establish paternity.

(c) A judicial or administrative proceeding to ratify paternity established in accordance with subsection (a) is neither required nor permitted.

(d) A signed acknowledgment of paternity entered under this Act may be challenged in court only on the basis of fraud, duress, or material mistake of fact, with the burden of proof on the challenging party. ***"  750 ILCS 45/6
(a) through (d) (West 1998).

The record shows that Fred Jr. was born to Tamara Allen on January 14, 2000.  Three days later, Allen and Dixson executed a voluntary acknowledgment of paternity admitting that they were Fred Jr.’s biological parents.  The resulting presumption of paternity became conclusive because neither Allen nor Dixson rescinded their voluntary acknowledgment in accordance with subsection 5(b) of the Act.

The Illinois Department of Public Aid (Department), 
ex
 
rel.
 Allen, later filed a complaint seeking child support and health insurance coverage from Dixson for Fred Jr.  Dixson then appeared in court and denied that he was Fred Jr.’s biological father, moving for genetic testing to determine paternity.  The judge entered an order granting the motion and requiring the Department to pay for the testing.  The Department filed a motion to vacate the order.  The judge denied the Department’s motion, noting that she allowed the testing "so as not to deprive [Dixson] of his rights of due process."

We believe the judge erred.  Subsection 6(b) of the Act provides that no further proceedings are necessary to establish Dixson’s paternity and responsibility for supporting Fred Jr.  Subsection 6(c) expressly prohibits further administrative or judicial proceedings devoted to ratifying Dixson’s paternity.  Furthermore, subsection 6(d) provides that Dixson cannot challenge his voluntary acknowledgment of paternity except on the basis of fraud, duress, or material mistake of fact.  There is no indication in the record that he alleged any of these circumstances before the trial court.  He does not allege them in this appeal either, having neglected to file a brief.  It appears that he voluntarily acknowledged paternity but simply wishes to avoid financial responsibility for Fred Jr.  Under the facts before us, the Act precludes genetic testing, or any other proceedings, to determine whether Dixson is Fred Jr.’s biological father.

Our holding does not jeopardize Dixson’s due process rights.  The voluntary acknowledgment form he signed provided ample notice of his rights and the ramifications of acknowledging paternity.

In a section entitled "Notice of Rights and Responsibilities," the form explained that Dixson was subjecting himself to payment of child support and waiving his rights to genetic testing and representation by counsel in proceedings to determine paternity.  In the same section, the form explained that Dixson could rescind his voluntary acknowledgment within the statutorily-prescribed time period.  In a different section, immediately above the signature line, the form provided:

"I acknowledge that I am the biological father of the child named on this Voluntary Acknowledgment of Paternity form.  I waive my right to genetic testing.  I have read and understand the rights and responsibilities listed on the back of this form and I understand that by signing this Voluntary Acknowledgment of Paternity, I waive these rights.  I accept the obligation to provide child support as determined under state law.  I have been provided an oral and written explanation of my rights, responsibilities and implications of signing this form."

The judge did not specify why she felt genetic testing was necessary to protect Dixson’s due process rights.  Dixson initially had rights to challenge his paternity.  However, he waived those rights by signing the voluntary acknowledgment form and not rescinding it later.  Statutory and constitutional rights may be waived as long as the waiver is knowing, voluntary, and intentional.  
In re Estate of Ferguson
, 313 Ill. App. 3d 931, 730 N.E.2d 1205 (2000).  A waiver is permanent and cannot be withdrawn without an unequivocal showing that it was unknowing, involuntary, or unintentional.  
Estate of Ferguson
, 313 Ill. App. 3d 931, 730 N.E.2d 1205.  Dixson has not even tried to make such a showing.  We see no due process violation.

The judgment of the McDonough County circuit court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

HOLDRIDGE and SLATER, JJ., concurring.