(No. 97120.

THE PEOPLE *ex rel.* THE DEPARTMENT OF PUBLIC AID, Appellant, v. ROMEL C. SMITH, Appellee.

*Opinion filed September 23, 2004.—Rehearing denied November 22, 2004.*

Lisa Madigan, Attorney General, of Springfield (Gary Feinerman, Solicitor General, and Diane M. Potts, Assistant Attorney General, of Chicago, of counsel), for appellant.

Jeffrey S. Harris and G. Paul McFarling, of Attorneys Serving You, L.L.C., of Maywood, for appellee.

JUSTICE THOMAS delivered the opinion of the court:

At issue is whether a man who signs a voluntary acknowledgment of paternity can later seek to undo the acknowledgment on the basis of DNA test results. We hold that he cannot.

## BACKGROUND

On October 9, 1997, Valerie Dawson gave birth to Kendra Smith. Dawson and respondent, Romel Smith, executed a voluntary acknowledgment of paternity two days later. By executing this form, respondent became Kendra's legal father. See 750 ILCS 45/6(a), (b) (West 2002). The acknowledgment form informed respondent that, by signing it, he would become "the legal father of the child for all purposes." Moreover, the form advised respondent of his right to genetic testing, the legal consequences of his decision to sign the form, and what rights he was waiving by signing the form. Under the large bold heading "Notice of Rights and Responsibilities," respondent was advised of the following:

"1. When the mother and alleged biological father properly sign the Voluntary Acknowledgment of Paternity form and, if required, the husband/exhusband and mother sign the Voluntary Denial of Paternity form, the alleged biological father becomes the legal father of the child for all purposes. The biological father and/or mother may be ordered to pay child support until the child is at least eighteen years old, including retroactive child support from the date of the child's birth, reimbursement of public assistance paid to the custodial parent for the child; medical costs; and medical insurance for the child until the child is at least eighteen years old.

2. You have the right to an attorney, a hearing and a right to have genetic testing. When the alleged biological father and the mother sign the Voluntary Acknowledgment of Paternity they are waiving those rights. Custody of the child is presumed to be with the mother. The alleged biological father may petition the courts for custody and visitation rights.

3. You should have a genetic test if you are not sure who is the biological father of the child. If the results of the genetic testing show that the man is the biological father of the child you can sign the Voluntary Acknowledgment of Paternity form and the mother and husband/exhusband may sign the Voluntary Denial of Paternity form.

4. If you want legal advice you should talk to an attorney. If you would like to establish paternity without going to court or need other child support services, you may call the Illinois Department of Public Aid at 1-800-447-4278. Persons using a teletypewriter (TTY) may call 1-800-526-5812."

Respondent's signature appears on the form directly under an affirmation that he (1) had read and understood his rights and responsibilities listed on the form; (2) was waiving those rights; (3) did not want a genetic test; and (4) was accepting the obligation to provide child support.

On December 3, 1997, the State, on behalf of the Illinois Department of Public Aid, filed a petition to set child support. The petition alleged that respondent had failed to meet his obligations under the Illinois Public Aid Code and asked the circuit court to order respondent to pay child support commensurate with statutory guidelines. On May 4, 1998, the court ordered respondent to pay $38.18 per week in child support and further ordered him to obtain medical insurance coverage for Kendra.

On June 18, 2002, respondent filed a *pro se* petition to terminate child support. Respondent alleged in the petition that he was not Kendra's biological father. The State moved to dismiss the petition pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2002)).

Respondent obtained an attorney and refiled his action as a complaint to declare the nonexistence of the parent and child relationship pursuant to section 7(b—5) of the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/7(b—5) (West 2002)). Respondent asserted in

the complaint that he had signed the voluntary acknowledgment of paternity in 1997 based on Dawson's representation that he was Kendra's biological father. Respondent entered the military on or about July 7, 1998, and was discharged on or about December 12, 1999. During this time, respondent saw Kendra on only a few occasions. In March 2002, respondent began to doubt that Kendra was his child because she did not share any of his physical characteristics. Respondent had himself and Kendra tested at DNA Diagnostics Center on April 29, 2002, and the test results showed a 0% chance that he was Kendra's biological father. The test results were certified on May 10, 2002, but respondent alleged that he did not receive them until June 17, 2002, because of administrative problems. Respondent attached the DNA test results to his complaint.

The State moved to dismiss the complaint pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2002)), arguing that respondent could not pursue this action because he had signed a voluntary acknowledgment of paternity. The State relied on section 5(b) of the Parentage Act (750 ILCS 45/5(b) (West 2002)), which provides that the presumption of paternity arising out of a voluntary acknowledgment becomes conclusive if the acknowledgment is not rescinded upon the earlier of (1) 60 days after the acknowledgment is signed; or (2) "the date of an administrative or judicial proceeding relating to the child (including a proceeding to establish a support order) in which the signatory is a party." The State further relied on section 6(d) of the Parentage Act (750 ILCS 45/6(d) (West 2002)), which provides that a voluntary acknowledgment of paternity may be challenged only on grounds of fraud, duress, or material mistake of fact.

Respondent argued in a brief in support of his complaint that he had filed a proper action pursuant to

section 7(b—5) of the Parentage Act, which provides as follows:

"An action to declare the non-existence of the parent and child relationship may be brought subsequent to an adjudication of paternity in any judgment by the man adjudicated to be the father pursuant to the presumptions in Section 5 of this Act if, as a result of deoxyribonucleic acid (DNA) tests, it is discovered that the man adjudicated to be the father is not the natural father of the child. Actions brought by the adjudicated father shall be brought by verified complaint. If, as a result of the deoxyribonucleic acid (DNA) tests, the plaintiff is determined not to be the father of the child, the adjudication of paternity and any orders regarding custody, visitation, and future payments of support may be vacated." 750 ILCS 45/7(b—5) (West 2002).

Section 7(b—5) references the presumptions in section 5. These presumptions are as follows:

"§ 5. Presumption of Paternity

(a) A man is presumed to be the natural father of a child if:

(1) he and the child's natural mother are or have been married to each other, even though the marriage is or could be declared invalid, and the child is born or conceived during such marriage;

(2) after the child's birth, he and the child's natural mother have married each other, even though the marriage is or could be declared invalid, and he is named, with his written consent, as the child's father on the child's birth certificate;

(3) he and the child's natural mother have signed an acknowledgment of paternity in accordance with rules adopted by the Illinois Department of Public Aid under Section 10—17.7 of the Illinois Public Aid Code; or

(4) he and the child's natural mother have signed an acknowledgment of parentage or, if the natural father is someone other than one presumed to be the father under this Section, an acknowledgment of parentage and denial of paternity in accordance with

Section 12 of the Vital Records Act." 750 ILCS 45/ 5(a) (West 2002).

Respondent argued that, because he had satisfied all the requirements of section 7(b—5), his cause of action must be allowed to proceed. He signed a voluntary acknowledgment of paternity, and therefore was presumed to be Kendra's father under subsection (a)(4). He later obtained DNA tests that showed he was not Kendra's father. Thus, respondent contended that he was entitled to file an action under section 7(b—5).

Following a hearing, the circuit court granted the State's motion to dismiss. The circuit court relied on the provision of the Parentage Act that the presumption of paternity arising from a voluntary acknowledgment of paternity becomes conclusive unless it is timely rescinded. 750 ILCS 45/5(b) (West 1992). The court further relied on section 6(d) of the Parentage Act, which provides that a voluntary acknowledgment may be challenged only on the basis of fraud, duress, or material mistake of fact. 750 ILCS 45/6(d) (West 2002). As respondent had neither rescinded the acknowledgment within 60 days nor challenged the acknowledgment on one of the grounds listed in section 6(d), the court ruled that his action had to be dismissed.[1] The court specifically found that respondent's interpretation would "render the acknowledgment provision of the statute meaningless."

The appellate court reversed. 343 Ill. App. 3d 208. The court relied on the plain language of section 7(b—5), which it noted allowed a cause of action to be brought by a man adjudicated to be the father " 'pursuant to the presumptions in Section 5 of this Act.' " 343 Ill. App. 3d at 214, quoting 750 ILCS 45/7(b—5) (West 2002). The court stated

---

[1]Respondent did not amend his complaint to assert a cause of action based on one of the grounds listed in section 6(d), and this opinion addresses solely whether he was entitled to maintain a cause of action under section 7(b—5).

that, pursuant to section 6(b) of the Parentage Act, a voluntary acknowledgment of paternity has " 'the full force and effect of a judgment.' " 343 Ill. App. 3d at 216, quoting 750 ILCS 45/6(b) (West 2002). Thus, according to the court, respondent had been adjudicated to be Kendra's father pursuant to one of the presumptions in section 5. 343 Ill. App. 3d at 216. The court acknowledged the conflict with section 6(d)'s provision that " '[a] signed acknowledgment of paternity entered under this Act may be challenged in court only on the basis of fraud, duress, or material mistake of fact' " (343 Ill. App. 3d at 215, quoting 750 ILCS 45/6(d) (West 2002)). However, the court held that, because section 6 was part of the original Act, which became effective July 1, 1985, and section 7(b—5) became effective August 7, 1998, it was "evident that section 7(b—5) was intended to create a limited exception to that rule." 343 Ill. App. 3d at 215. The court acknowledged that its interpretation rendered section 6 confusing, and suggested that the legislature amend section 6 to "eliminate the confusion." 343 Ill. App. 3d at 215. The court specifically rejected the State's argument that the terms "adjudicated" and "adjudication" in section 7(b—5) referred to judicial proceedings and were thus inapplicable to voluntary acknowledgments of paternity because there is no judgment entered in these cases. According to the court, this argument would render section 7(b—5) "entirely meaningless" because the presumptions in sections 5(a)(1) (man presumed to be the father if child is born or conceived during marriage) and 5(a)(2) (man presumed to be father if after child's birth he marries child's mother and is named as the father on the birth certificate) do not necessarily involve judgments either. 343 Ill. App. 3d at 216. We allowed the State's petition for leave to appeal.

## ANALYSIS

Resolving this issue is solely a matter of statutory construction. We review issues of statutory construction

*de novo. In re D.D.*, 196 Ill. 2d 405, 418 (2001). The primary objective in construing a statute is to determine and give effect to the legislature's intent. *Yang v. City of Chicago*, 195 Ill. 2d 96, 103 (2001). This effort properly begins with an examination of the statutory language. *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 270 (1998). Each undefined word in the statute must be ascribed its ordinary and popularly understood meaning. *Texaco-Cities*, 182 Ill. 2d at 270. If the language of the statute is clear and unambiguous, there is no need to resort to other aids of construction. *In re D.L.*, 191 Ill. 2d 1, 9 (2000). A statute is ambiguous if it is capable of more than one reasonable interpretation. *In re B.C.*, 176 Ill. 2d 536, 543 (1997).

Here, the apparent conflict arises when a man who has signed a voluntary acknowledgment of paternity wishes to bring a section 7(b—5) action. Section 7(b—5) provides that the cause of action it describes may be brought by a man "adjudicated to be the father pursuant to the presumptions in Section 5 of this Act." 750 ILCS 45/7(b—5) (West 2002). Section 5 contains four types of presumptions of paternity, two arising out of marriage (750 ILCS 45/5(a)(1), (a)(2) (West 2002)), and two arising out of voluntary acknowledgments (750 ILCS 45/5(a)(3), (a)(4) (West 2002)). However, allowing this cause of action to be brought by a man who becomes a father pursuant to a voluntary acknowledgment would directly contradict section 6(d) of the Act, which clearly provides that a "signed acknowledgment of paternity entered under this Act may be challenged in court only on the basis of fraud, duress, or material mistake of fact" (750 ILCS 45/6(d) (West 2002)).

One way to avoid the apparent conflict would be simply to give the terms "adjudication," "adjudicated," and "judgment" in section 7(b—5) their plain and ordinary meanings. "Adjudicate" means "[t]o rule upon

judicially" (Black's Law Dictionary 45 (8th ed. 2004)), while an "adjudication" is "[t]he legal process of resolving a dispute; the process of judicially deciding a case" (Black's Law Dictionary 45 (8th ed. 2004)). We have previously held that "judgment" has a well-settled definition as a legal term: "it is a court's official decision with respect to the rights and obligations of the parties to a lawsuit." *In re Marriage of Logston*, 103 Ill. 2d 266, 277 (1984). Section 7(b—5) provides that the cause of action may be brought "subsequent to an adjudication of paternity in any judgment by the man adjudicated to be the father pursuant to the presumptions in section 5." The State contends that this ends the inquiry because a man who becomes a father pursuant to a voluntary acknowledgment is never adjudicated to be the father and there is no judgment entered. Thus, according to the State, a man who has become a father by signing a voluntary acknowledgment lacks standing to bring a section 7(b—5) action. The State correctly points out that section 6(c) of the Parentage Act provides that "[a] judicial or administrative proceeding to ratify paternity established in accordance with subsection (a) [providing for establishment of paternity by voluntary acknowledgment] is neither required nor permitted." 750 ILCS 45/6(c) (West 2002). The State's interpretation would give effect to the plain language of both section 7(b—5) and section 6(d).

Respondent points out, however, that the Parentage Act treats a voluntary acknowledgment as having the same effect as a judgment. Section 6(b) provides that "[p]aternity established in accordance with subsection (a) has the full force and effect of a judgment entered under this Act and serves as a basis for seeking a child support order without any further proceedings to

establish paternity."[2] 750 ILCS 45/6(b) (West 2002). Moreover, it is apparent that the legislature intended for actions under section 6(d) of the Parentage Act (challenging voluntary acknowledgments of paternity on the basis of fraud, duress, or material mistake of fact) to be brought by means of a section 2—1401 petition (735 ILCS 5/2—1401 (West 2002)). As part of the same public act that added subsection (d) to section 6 of the Parentage Act, the legislature amended section 2—1401(a) of the Code of Civil Procedure to provide that *"[e]xcept as provided in Section 6 of the Illinois Parentage Act of 1984,* there shall be no distinction between actions and other proceedings, statutory or otherwise, as to availability of relief, grounds for relief or the relief obtainable." (Emphasis added.) Pub. Act 90—18, § 90, eff. July 1, 1997; 735 ILCS 5/2—1401(a) (West 2002). Section 2—1401 is entitled "Relief from Judgments," and by its express terms applies when a party is seeking "[r]elief from final orders and judgments." 735 ILCS 5/2—1401(a) (West 2002). Thus, the legislature has provided that voluntary acknowledgments should be attacked by the method of relief used to attack final orders and judgments. Both the State and respondent have presented reasonable arguments as to what the legislature meant by the terms "adjudication," "adjudicated," and "judgment" in section 7(b—5), and thus we must look to other aids of construction.

Before doing so, however, we may easily reject the appellate court's resolution of the meaning of the word "adjudicate." Relying on the rule of statutory construction that no term should be rendered superfluous or meaningless, the court held that the State's interpretation would render section 7(b—5) "entirely meaning-

---

[2]This provision could also be seen as supporting the State's view because it is an explicit recognition by the legislature that voluntary acknowledgments are *not* judgments.

less." 343 Ill. App. 3d at 216. The court reasoned that, just as the voluntary acknowledgment presumptions never involve judgments, the two marital presumptions contained in sections 5(a)(1) and (a)(2) do not *necessarily* involve judgments either. 343 Ill. App. 3d at 216. The appellate court held that because a judgment is not necessarily entered when a man is presumed to be the father in one of these instances, the State's interpretation would render section 7(b—5) *entirely* without meaning. Of course, this is not the case at all. The section would apply to a man adjudicated to be a father in a dissolution of marriage judgment. A man adjudicated to be a father in a dissolution of marriage judgment, who learns through DNA tests that he is not the child's father, would have standing to bring a section 7(b—5) action. Thus, it is unclear how the appellate court reached the conclusion that the State's interpretation would render section 7(b—5) *entirely* without meaning. Moreover, the legislative history shows that the situation described above is exactly what the legislature had in mind when it enacted section 7(b—5).

When a statute's meaning is unclear, the court may examine the legislative history. *Country Mutual Insurance Co. v. Teachers Insurance Co.*, 195 Ill. 2d 322, 330 (2001). Section 7(b—5) was added by Public Act 90—715, which became effective on August 7, 1998. The legislative history shows that the bill that became Public Act 90—715 was inspired by the case of a man who was adjudicated a father pursuant to one of the marital presumptions. The legislation was sponsored by Senator Beverly Fawell. When introducing the legislation, Senator Fawell stated the following:

> "This is a bill that was brought to me by a constituent of mine who had a problem that didn't seem to be solved any other way. He was married, he went overseas, because he was in the Army. His wife had a child. Came back, his wife had announced she wanted a divorce. They got the

divorce. He, of course, was ordered to pay child support, which he had no objection to. She moved to another State. He kept saying, I want to see my son, she would not allow him to see him until four years after the child was born. He then found out that this child was not his through a DNA test." 90th Ill. Gen. Assem., Senate Proceedings, April 2, 1998, at 49 (statements of Senator Fawell).

Further, Senator Fawell stated:

"It amends the Parentage Act, and it *** allows a man who has been adjudicated the father of a child pursuant to *the presumption that he is the father due to the marriage*, if there is—a DNA test discovers that the man is not the natural father, then the orders involving custody, visitation and child support can be declared null and void." (Emphasis added.) 90th Ill. Gen. Assem., Senate Proceedings, April 1, 1998, at 10 (statements of Senator Fawell).

She also remarked that the problem she was trying to correct involved situations involving the marriage presumptions:

"[T]hese are for cases *** where the man assumed he was the father, as in the case of my constituent, didn't question the fact that this might not be his child, *** he was overseas, so he had no knowledge of the fact that *his wife* was running around. And now because he *didn't contest [paternity], or bring the question up during the divorce*, or two years afterwards—didn't find out until three years afterwards, he's stuck. *** This is not right. And *that's all I'm trying to correct.*" (Emphases added.) 90th Ill. Gen. Assem., Senate Proceedings, April 2, 1998, at 53 (statements of Senator Fawell).

Notably, in the debates of neither the House nor the Senate is there any mention of the presumptions arising out of voluntary acknowledgments of paternity. This is significant because the subsection of the Parentage Act providing that voluntary acknowledgments may be challenged only on the basis of fraud, duress, or material mistake of fact had been in effect for only one year. The appellate court mistakenly suggested that this provision had been in effect since 1985 and implied that the legislature must have simply overlooked it:

"Section 6 was part of the original Act, which became effective July 1, 1985. Section 7(b—5) was an amendment to the Act that became effective August 7, 1998. Although section 6(d) continues to set forth the rule that voluntary acknowledgments of paternity may be challenged only on the basis of fraud, duress, or mistake of fact, it is evident that section 7(b—5) was intended to create a limited exception to that rule. *** Nonetheless, we agree that the current language in section 6(d) is confusing, and we hope the legislature would consider amending this language to eliminate the confusion."[3] 343 Ill. App. 3d at 215.

The appellate court's assertion was true only in the sense that the current version of the Parentage Act and the original version both contain a section 6. The 1985 version of section 6, however, bears little relation to the current version. Compare Ill. Rev. Stat. 1985, ch. 40, par. 2506, with 750 ILCS 45/6 (West 2002). And, most importantly, the provision of section 6(d) that voluntary acknowledgments may be challenged only on the basis of fraud, duress, or material mistake of fact, became effective merely one year before section 7(b—5). See Pub. Act 90—18, § 120, eff. July 1, 1997. This portion of section 6(d) was not, as the appellate court suggested, a 20-year-old relic that the legislature had simply forgotten.

This amendment to section 6(d) was not passed on a whim, but served a distinct purpose: bringing Illinois' statute in line with Title IV-D of the Social Security Act. In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (Pub. L. 104—193, 110 Stat. 2105), which replaced the federal AFDC program contained in Title IV-A with a program of block grants to states for Temporary Assistance for Needy Families (TANF) (Pub. L. 104—193, 110 Stat.

---

[3]The appellate court held that this interpretation gives effect to the plain language of both sections 6(d) and 7(b—5). 343 Ill. App. 3d at 215. We fail to see how this interpretation gives effect to the word "only" in section 6(d), which is arguably the most important word in that section.

2112-13). States participating in the TANF program receive federal funding for their public assistance programs to families with dependent children. *In re Marriage of Lappe*, 176 Ill. 2d 414, 425 (1997). A state's participation in the TANF program is voluntary, but if a state chooses to participate, its plan must comply with the requirements of the Social Security Act and the regulations promulgated thereunder. 42 U.S.C. § 602 (2000); *Lappe*, 176 Ill. 2d at 423-26. Illinois has elected to participate in the TANF program. 305 ILCS 5/4—0.5 *et seq.* (West 2002); *Lappe*, 176 Ill. 2d at 426. One of the requirements of TANF participation is that a state must operate a child support enforcement program in compliance with Title IV-D. 42 U.S.C. § 602(a)(2) (2000). Among the requirements of Title IV-D are that participating states (1) provide a simple process for voluntarily acknowledging paternity (42 U.S.C. § 666(a)(5)(C)(i) (2000)); (2) require that voluntary acknowledgments may be rescinded only within the earlier of 60 days or the date of an administrative or judicial proceeding relating to the child in which the signatory is a party, including a proceeding to establish a support order (42 U.S.C. § 666(a)(5)(D)(ii) (2000)); and (3) ensure that, after the recession period, a voluntary acknowledgment may be challenged in court only on the basis of fraud, duress, or material mistake of fact, with the burden of proof on the challenger (42 U.S.C. § 666(a)(5)(D)(iii) (2000)). Illinois amended the Parentage Act to contain this exact language, and the amendment became effective July 1, 1997. See Pub. Act 90—18, § 120, eff. July 1, 1997. Not coincidentally, this was the date upon which the TANF program officially replaced the AFDC program (see 305 ILCS 5/4—0.5 (West 2002); 42 U.S.C. § 601 *et seq.* (2000)). The Legislative Synopsis and Digest explains that one of the purposes of the legislation enacting this provision was to make "changes to implement the federal Personal

Responsibility and Work Opportunity Reconciliation Act of 1996 with respect to changes to child support enforcement provisions." III Final Legislative Synopsis and Digest of the 90th Ill. Gen. Assem. (No. 12), at 2208.

If we accepted the view of respondent and the appellate court, then "only" in section 6(d) would no longer mean "only." In addition to bringing a challenge based on fraud, duress, or material mistake of fact, a man who had voluntarily acknowledged paternity could also bring a challenge based on DNA test results. Thus, Illinois would no longer be in compliance with Title IV-D of the Social Security Act. As noted previously, nothing was said in the debates of either the House or the Senate on Public Act 90—715 about using DNA test results to undo voluntary acknowledgments of paternity. Moreover, there is nothing to indicate that the legislature sought to undo the sweeping and comprehensive changes it had made just one year previously to bring Illinois law into compliance with federal requirements.

We further believe that the difference in the way the marital presumptions and the voluntary acknowledgment presumptions are treated in the Parentage Act supports the State's construction of the statute. Statutes should be construed as a whole, with each provision evaluated in connection with every other section. *Primeco Personal Communications, L.P. v. Illinois Commerce Comm'n*, 196 Ill. 2d 70, 88 (2001). The Parentage Act provides that the marital presumptions of paternity are rebuttable presumptions, while the voluntary acknowledgment presumptions are conclusive presumptions. Section 5(b) provides that the marital presumptions may be rebutted only by clear and convincing evidence. 750 ILCS 45/5(b) (West 2002). By contrast, the presumption arising from a voluntary acknowledgment becomes conclusive if not rescinded before the earlier of two dates provided by the Parentage Act. 750 ILCS 45/5(b)(1), (b)(2) (West

2002); see also 410 ILCS 535/12(5)(a) (West 2002) ("The signing and witnessing of the acknowledgment of parentage or, if the presumed father of the child is not the biological father, the acknowledgment of parentage and denial of paternity conclusively establishes a parent and child relationship in accordance with Sections 5 and 6 of the Illinois Parentage Act of 1984"). A rebuttable presumption is one that "may be overcome by the introduction of contrary evidence" (Black's Law Dictionary 1224 (8th ed. 2004)), while a conclusive presumption is one that "cannot be overcome by any additional evidence or argument" (Black's Law Dictionary 1223 (8th ed. 2004)). Thus, it makes sense to allow presumed fathers under sections 5(a)(1) and (a)(2) to challenge the presumption with DNA evidence because that is merely a rebuttable presumption that can be overcome by clear and convincing evidence. It makes no sense, on the other hand, to allow those men who sign voluntary acknowledgments to challenge the presumption of their paternity with DNA evidence because the presumption with respect to them is conclusive. Under the limited circumstances presented in section 6(d), a man who voluntarily acknowledges paternity can later challenge the *voluntariness* of the acknowledgment if he can show that it was procured by fraud, duress, or material mistake of fact, but the Parentage Act does not allow him to challenge the conclusive presumption of paternity with contrary evidence.

The Parentage Act's disparate treatment of these two groups of presumed fathers is logical. A man who voluntarily acknowledges paternity signs an acknowledgment form advising him of his rights and specifically informing him that he is accepting the responsibility of being a parent to the child, that he has a right to genetic testing, and that he is waiving that right by signing the voluntary acknowledgment. Thus, a presumed father who

signs a voluntary acknowledgment is in an entirely different position from a man who simply assumes he is the child's father because of his marriage to the child's mother. Unlike a man presumed to be a child's father under subsection (a)(1) or (a)(2), a man who signs a voluntary acknowledgment of paternity specifically agrees to forgo any further inquiry into whether he is the child's biological father and to assume the responsibility for being a parent to the child. Clearly, it would be unreasonable to allow a man in this position to undo his voluntary acknowledgment years later on the basis of DNA test results, when his paternity was based not on a mere marital presumption that he was the child's father but on his conscious decision to accept the legal responsibility of being the child's father. This is obviously the reason that the legislature chose to make the marital presumptions rebuttable and the voluntary acknowledgment presumptions conclusive. Consideration of the Parentage Act as a whole supports the State's argument that the legislature did not intend for section 7(b—5) to apply to voluntary acknowledgments of paternity.

Finally, we reject the appellate court's conclusion that section 7(b—5) must apply to voluntary acknowledgments because it refers to the "presumptions in Section 5" and not to the "presumptions in sections 5(a)(1) and (a)(2)." The legislature could also limit the reach of section 7(b—5) to sections 5(a)(1) and (a)(2) by requiring an adjudication, and we believe that this is what the legislature did. A section 7(b—5) action may be brought only by a man adjudicated to be a father in a judgment. Neither respondent nor the appellate court have explained why the legislature would go out of its way to use the terms "adjudicated," "adjudication," and "judgment" if it wanted section 7(b—5) to apply to those men who have signed voluntary acknowledgments. We believe that when the Parentage Act is considered as a whole,

along with the legislative histories of sections 6(d) and 7(b—5), it is clear that the legislature meant to give the terms "adjudicated," "adjudication," and "judgment" their plain and ordinary meanings, and that the legislature was not referring to documents that only had the force and effect of judgments or that could be attacked in the same manner as judgments. This interpretation gives effect to the plain language of both sections 7(b—5) and 6(d) and does not result in a version of the Parentage Act that is no longer in compliance with Title IV-D of the Social Security Act.

For all of the above reasons, we agree with the State that a section 7(b—5) action may not be brought by a man who has signed a voluntary acknowledgment of paternity. Accordingly, we reverse the appellate court's judgment and affirm the circuit court's dismissal of respondent's complaint.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*