THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* FRANCINE JACKSON, Plaintiff-Appellant, v. JOSEPH MANNIE, Defendant-Appellee.

First District (2nd Division)    No. 1—08—1582

Opinion filed August 11, 2009.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Sunil Bhave, Assistant Attorney General, of counsel), for appellant.

No brief filed for appellee.

JUSTICE CUNNINGHAM delivered the opinion of the court:

The Illinois Department of Healthcare and Family Services (the Department), on behalf of the plaintiff-appellant, Francine Jackson

(Jackson), appeals from an order of the circuit court of Cook County vacating a 30-year-old parentage and support order, and cancelling the child support arrearage owed by the defendant-appellee, Joseph Mannie (Mannie). The circuit court subsequently denied the Department's motion to vacate that order. On appeal, the Department contends that: (1) the circuit court's order vacating the 30-year-old judgment is void for lack of subject matter jurisdiction; (2) the circuit court had no authority to vacate the child support arrearage because the right to the money owed by Mannie had already vested in the Department; and (3) the Illinois Parentage Act of 1984 (the Act) (750 ILCS 45/1 *et seq.* (West 2006)) prohibits a paternity challenge after a child reaches the age of 18. Mannie has not filed an appellee's brief. Nevertheless, this court has elected to consider this appeal on the merits under the principles set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 131-33, 345 N.E.2d 493, 494-95 (1976). We reverse the ruling of the circuit court of Cook County.

## BACKGROUND

Documents in the record show that Jackson gave birth to a son, ElSaleem, out of wedlock on December 19, 1978. Six months later, Jackson filed a complaint with the circuit court of Cook County against Mannie for child support. On August 17, 1979, Mannie appeared in court and admitted that he was ElSaleem's father. Consequently, on October 17, 1979, the circuit court entered an order finding that Mannie was ElSaleem's father and directing him to pay $113.50 per month to the clerk of the circuit court for child support.

In September 1987, Mannie was sent a notice of delinquency from the Child Support Enforcement Unit of the Illinois Department of Public Aid,[1] indicating that he had failed to make any child support payments and was delinquent in the amount of $10,669. On October 26, 1987, the circuit court entered an order requiring any employer of Mannie to withhold from his income the $113.50 per month for child support, plus an additional $11.35 per month for the delinquency.

Ten years later, in August 1997, the Department filed a petition for judgment against Mannie, alleging that he owed $22,006 in arrearage for child support and asserting that the arrearage had vested in the Department. On September 30, 1997, the circuit court granted the Department's petition and entered a default judgment ordering Mannie to pay $250 per month until the $22,006 judgment was paid. The order indicated that child support for ElSaleem had terminated on his eighteenth birthday, December 19, 1996. The circuit court also entered

[1]In 2005, the Illinois Department of Public Aid was renamed the Illinois Department of Healthcare and Family Services.

a new order for withholding, directing any employer of Mannie to withhold the $250-per-month payment from his income until the judgment was paid. A year later, the circuit court entered another withholding order, raising Mannie's total monthly payment to $300.

In February 2000, the Department filed another petition for judgment. On February 17, 2000, Mannie appeared in court and the parties agreed to a continuance to allow him time to retain an attorney. The record does not contain the circuit court's ruling on the Department's petition for judgment which was filed in February 2000. However a January 2001 withholding order indicates Mannie's delinquency then totaled $29,509.

On June 19, 2007, Mannie filed a *pro se* motion requesting a reduction in his monthly child support payments because he was employed only part-time. He also requested a court-ordered DNA test of ElSaleem. On October 23, 2007, the circuit court, over the Department's objection, ordered the parties to submit to DNA testing. On February 8, 2008, the circuit court noted that an accounting showed that Mannie owed the Department $38,364.38 in child support arrearage, including interest. On that date, the court also found that the DNA tests revealed Mannie was not the father of ElSaleem. Based upon the DNA test results, the circuit court entered an order, *sua sponte*, over the Department's objection, finding that Mannie was not ElSaleem's father. The court then vacated the October 17, 1979, parentage and support order and cancelled Mannie's child support arrearage.

On April 24, 2008, the Department filed a petition to vacate the circuit court's February 8, 2008, order, alleging that it was void pursuant to section 2—1401(f) of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2—1401(f) (West 2008)), arguing that the circuit court did not have subject matter jurisdiction to enter the order on February 8, 2008. The Department argued that the circuit court lost jurisdiction to vacate the October 17, 1979, parentage and support order 30 days after it was entered, which was nearly 30 years earlier. It further argued the circuit court lacked jurisdiction because Mannie did not follow the strict requirements for challenging his paternity under the Act (750 ILCS 45/7 (West 2008)), because he never filed a verified complaint and failed to meet other requirements of the Act. In addition, the Department argued that child support judgments are a vested right and cannot be retroactively modified or vacated. The circuit court denied the Department's petition to vacate the order of February 8, 2008, based on the court's finding that the DNA tests excluded Mannie as ElSaleem's father. In light of its ruling vacating the 1979 judgment, the circuit court did not address Mannie's petition to reduce his child support payments. This appeal was then taken by the Department.

## ANALYSIS

We first address the Department's contention that the circuit court's order vacating the 30-year-old parentage and support judgment is void for lack of subject matter jurisdiction. As it did in its April 24, 2008, petition to vacate in the circuit court, the Department argues that the circuit court lost jurisdiction to vacate the 1979 judgment 30 days after its entry, and thus, Mannie's 2007 paternity challenge was untimely. The Department asserts that Mannie's only option for challenging the paternity judgment would have been to file a section 2—1401 petition (735 ILCS 5/2—1401 (West 2006)) within two years after entry of that judgment. Instead, he remained idle on the issue for nearly 30 years.

Generally, a court loses jurisdiction over a case 30 days after the court enters a final order. *In re Parentage of G.E.M.*, 382 Ill. App. 3d 1102, 1118, 890 N.E.2d 944, 961 (2008). It is well established that where the circuit court lacked subject matter jurisdiction, or the inherent power to enter the particular order at issue, the court's judgment or order is void and may be attacked at any time in any court. *G.E.M.*, 382 Ill. App. 3d at 1115, 890 N.E.2d at 959. Thus, we review the issue of subject matter jurisdiction *de novo. In re Marriage of Devick*, 315 Ill. App. 3d 908, 912, 735 N.E.2d 153, 156 (2000).

Issues concerning parentage are governed by the Act (750 ILCS 45/1 *et seq.* (West 2006)). The circuit court's authority is limited to exercising the powers conferred upon the court by the Act, and the court cannot deviate from the procedure outlined in that statute. *G.E.M.*, 382 Ill. App. 3d at 1112, 890 N.E.2d at 956. The Act does not provide any statutory authority for the circuit court to vacate a paternity judgment and allow a parent to abandon his parental duties, regardless of how inconvenient those obligations may be for the parent. *G.E.M.*, 382 Ill. App. 3d at 1112-13, 890 N.E.2d at 956.

■ The Act states in pertinent part:

"(a) A man is presumed to be the natural father of a child if:

\* \* \*

(3) he and the child's natural mother have signed an acknowledgment of paternity in accordance with rules adopted by the Illinois Department of Public Aid under Section 10—17.7 of the Illinois Public Aid Code." 750 ILCS 45/5(d)(3) (West 2006).

Under the Act, when a man voluntarily acknowledges that he is the father of a child, and does not rescind that acknowledgment either: (1) within 60 days; or (2) by the date of a judicial or administrative proceeding involving the child, in which he is a party, whichever date is earlier, a conclusive presumption of paternity is created. 750 ILCS

45/5 (West 2006); *Department of Public Aid ex rel. Allen v. Dixson*, 323 Ill. App. 3d 600, 601, 752 N.E.2d 1147, 1149 (2001). Moreover, where there is a voluntary acknowledgment, a judicial proceeding to ratify paternity "is neither required nor *permitted*." (Emphasis added.) 750 ILCS 45/6(c) (West 2006); *Dixson*, 323 Ill. App. 3d at 602, 752 N.E.2d at 1149. Once the 60-day period for rescission has passed, the only manner by which a presumed father may challenge his paternity is by filing a petition under section 2—1401 of the Code of Civil Procedure alleging fraud, duress or material mistake of fact. 750 ILCS 45/6(d) (West 2006); *Department of Public Aid ex rel. Howard v. Graham*, 328 Ill. App. 3d 433, 435-36, 766 N.E.2d 272, 274 (2002). Thus, a man can subsequently challenge the *voluntariness* of his acknowledgment of paternity if he can demonstrate that it was procured by fraud, duress or material mistake of fact. However, he cannot contest the conclusive presumption of his paternity by presenting contrary evidence. *People ex rel. Department of Public Aid v. Smith*, 212 Ill. 2d 389, 405, 818 N.E.2d 1204, 1213 (2004).

Strong judicial policy favors the finality and stability of judgments, and such principles are especially "poignant in the context of parent-age determinations." *G.E.M.*, 382 Ill. App. 3d at 1118, 890 N.E.2d at 961. Thus, a man who voluntarily acknowledged paternity and never sought to rescind the acknowledgment in the manner outlined in the Act has forfeited his right to do so. See *Dixson*, 323 Ill. App. 3d at 602-03, 752 N.E.2d at 1149-50. In *Smith*, our supreme court expressly found:

> "Clearly, it would be unreasonable to allow a man in this position to undo his voluntary acknowledgment years later on the basis of DNA test results, when his paternity was based not on a mere \*\*\* presumption that he was the child's father but on his conscious decision to accept the legal responsibility of being the child's father." *Smith*, 212 Ill. 2d at 406, 818 N.E.2d at 1214.

Based on this reasoning, the *Smith* court held that an action to declare the father and child relationship nonexistent based on DNA test results could not be brought by a man who had voluntarily acknowledged his paternity. *Smith*, 212 Ill. 2d at 407, 818 N.E.2d at 1214. We find the holdings in *G.E.M.* and *Smith* instructive in resolving the issue before us.

In the case before us, while the circuit court's intuitive response to the results of the DNA testing, which clearly excluded Mannie as ElSaleem's father, is understandable, we find that the court's February 8, 2008, order vacating the 1979 parentage and support order and cancelling the arrearage was void.

For nearly 30 years, Mannie did not contest his paternity of ElSaleem. Further, he never challenged the voluntariness of his acknowledgment at any time. He never claimed to be a victim of fraud, duress or material mistake of fact. In fact, the record shows that the purpose of Mannie's June 2007 *pro se* motion was to request a reduction of his monthly child support arrearage payments. Thus as late as 2007, Mannie acknowledged his paternity and attendant financial responsibility. The Department asserts, and the record appears to support, that the request by Mannie for DNA testing in 2007 seems to be an afterthought. In challenging paternity 30 years after the fact, Mannie has attempted to do precisely what the *Smith* case says he cannot do. See *Smith*, 212 Ill. 2d 389, 818 N.E.2d 1204. Therefore, the circuit court erred by ordering the DNA test in 2007, thereby raising the issue of paternity, which was not properly before the court.

The Department's second contention on appeal asserts that the circuit court had no authority to vacate the child support arrearage because it had already vested in the Department. We agree. It is well established that delinquent child support payments are the vested right of the receiving party and cannot be modified or vacated by the circuit court. *In re Marriage of Burns*, 357 Ill. App. 3d 468, 470, 828 N.E.2d 833, 835 (2005). Thus, the circuit court erred when it vacated the paternity judgment and child support arrearage owed by Mannie. In light of our holding, we need not address the Department's argument that the Act prohibits a paternity challenge after a child reaches the age of 18.

Accordingly, we reverse the judgment of the circuit court of Cook County. We remand this case to the circuit court for further proceedings consistent with this opinion, specifically, so that the circuit court may rule on Mannie's June 2007 motion to reduce the amount of his arrearage due to financial hardship.

Reversed and remanded with directions.

KARNEZIS, P.J., and HOFFMAN, J., concur.