GEORGE W. KENNEDY CONSTRUCTION COMPANY, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Louise Stirnichuk, Appellee).

Second District (Industrial Commission Division)   No. 2—86—0382WC

Opinion filed February 3, 1987.

August M. Mangoni and Louis G. Atsaves, both of August M. Magoni, Ltd., of Chicago, for appellant.

Jeffrey B. Slemmons, of Chicago, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Decedent, Carl Stirnichuk, died in a compensable work-related accident. Respondent, Louise Stirnichuk, filed an adjustment of claim contending that she was the lawful widow of Carl at the time of his death. Petitioner opposed the application upon the basis that at the time of Carl's death, he and Louise were divorced. The arbitrator determined after hearing that Louise was eligible to receive death benefits as the surviving widow on the basis of a circuit court order en-

tered in the divorce proceeding after Carl's death which vacated the Stirnichuks' dissolution judgment.

On review, the Commission affirmed the arbitrator's decision but modified the award of benefits to the sum of $456.33 per week. On *certiorari*, the circuit court confirmed the decision of the Commission in all respects save that it reversed and remanded to the Commission for a recalculation of the applicable rate of compensation.

On appeal, petitioner contends that error occurred (1) in the determination that Louise was the surviving widow of Carl; (2) in the calculation of decedent's average wage rate; and (3) in the admission of evidence in violation of the Dead Man's Act (see Ill. Rev. Stat. 1985, ch. 110, par. 8—201).

The facts are largely undisputed. Carl and Louise were married in Lake Villa, Illinois, in 1960. Two children were adopted and were both married and emancipated by the time of these proceedings. During the winter of 1980, Carl moved to Grand Cayman, British West Indies. Louise and her daughter remained in the marital home in Waukegan, Illinois, so that the daughter could finish high school. Upon her graduation, the daughter and Louise joined decedent in Grand Cayman in 1981. It was Carl's practice to spend approximately one half of the year during the winter months in Grand Cayman. He would then return to Lake County, Illinois, to work for the petitioner as a truck driver for the remainder of the year.

In 1983 Carl returned to Lake County in March. Conflicting evidence was presented as to whether Louise was aware that Carl planned to file for divorce upon his return to Illinois. It is undisputed, however, that Carl did file a petition for dissolution of marriage on April 1, 1983, in the Lake County circuit court. Louise was personally served with a copy of summons and the petition for dissolution on April 15, 1983, in Grand Cayman by a specially appointed process server. An order of default was entered against Louise by the Lake County circuit court on June 22, 1983, upon her failure to appear in the dissolution action.

Immediately following entry of the default a further hearing was held. The circuit court found it had jurisdiction over the parties and subject matter and granted a divorce to Carl on the ground of extreme and repeated mental cruelty. A property distribution submitted by Carl was approved and incorporated in the terms of the dissolution judgment. The judgment was entered of record on June 22, 1983, the same day as the order of default.

Carl was subsequently killed July 21, 1983, when the truck he was driving for the petitioner was struck by a train.

On August 9, 1983, 48 days after entry of the final dissolution judgment, Louise filed a motion to vacate the dissolution decree under section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401). The motion to vacate was subsequently allowed on September 28, 1983, by written order of the trial court in Lake County. In the order granting the motion, the trial judge recited the following:

> "It is herewith ordered that due to the manifest inequity of the order of dissolution not considering the interest in maintenance of Louise Stirnichuk, a woman unable to obtain gainful employment and a housewife during the course of the 23 year marriage & the ability of the husband to earn a substantial income at and before the entry of the decree, and the failure of the decree to provide concretely for division of marital assets considering the noted inequity, the decree of June 22, 1983, is herewith vacated instanter. Further, the court being advised that petitioner is deceased & the petition is moot, the above captioned cause is dismissed instanter."

Thereafter, Louise filed her application for adjustment of claim with the Commission.

Compensation in cases involving fatalities is governed by section 7 of the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.7) which provides:

> "The amount of compensation which shall be paid for an accidental injury to the employee resulting in death is:
>
> Widow, widower, child or children
>
> (a) If the employee *leaves surviving* a widow, widower, child or children, the applicable weekly compensation rate computed in accordance with subparagraph 2 of paragraph (b) of Section 8, shall be payable during the life of the widow or widower *** then until the death of the widow or widower ***.
>
>                                        * * *
>
> In the event of the remarriage of a widow or widower, where the decedent did not *leave surviving* any child or children who, at the time of such remarriage, are entitled to compensation benefits under this Act, the surviving spouse shall be paid a lump sum equal to 2 years compensation benefits and all further rights of such widow or widower shall be extinguished.
> ***
>
> Any beneficiary entitled to compensation under this paragraph (a) of this Section shall receive from the special fund provided in paragraph (f) of this Section, in addition to the com-

pensation herein provided, supplemental benefits in accordance with paragraph (g) of Section 8." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 48, par. 138.7.)

The first issue this court is asked to resolve is whether the Industrial Commission erred in determining that Louise was the wife of Carl at the time of his death as a result of an accident arising out of and in the course of his employment with the petitioner. Petitioner argues, initially, that Louise's status was fixed as of the date of Carl's accident and death, July 21, 1983. Because, petitioner reasons, Louise and Carl were legally divorced pursuant to a valid, final judgment of dissolution on that date, Louise could not have been Carl's widow. Since the divorce decree was in full force and effect on the date of the death and was, at most, only a voidable judgment, the subsequent order of the circuit court which vacated the dissolution could not serve to revive or alter Louise's prior legal status, at least as between Louise and the petitioner. Respondent contends that the substantive effect of an order vacating a prior judgment restores Louise to her legal status as decedent's wife and operates as if the dissolution judgment had never been entered.

Both parties cite *Harmes v. Industrial Com.* (1968), 40 Ill. 2d 488, 240 N.E.2d 674, to support their respective positions. In that case, two claimants contended they were the legal widows of the decedent. Decedent had married Germaine in 1948 and separated from her in 1954. Decedent filed a complaint for divorce in 1964 charging Germaine with desertion and allegedly made service upon her by publication. An *ex parte* divorce in favor of decedent was entered against Germaine, and decedent thereafter married Shirley prior to his death in an industrial accident one month later. Both "widows" filed applications for adjustment of claim with the Commission. Prior to arbitration, Germaine petitioned the circuit court to vacate the divorce order claiming that she had no previous notice of the proceedings and that decedent failed to exercise diligent inquiry to ascertain her place of last known residence. She also alleged that the last known address of residence furnished in the affidavit for publication was false and known to have been false. The circuit court vacated the divorce, and the supreme court affirmed, holding that the language of the order vacating the decree made it void *ab initio* since Germaine had never been validly served and was, therefore, never validly divorced. Germaine was thus entitled to the widow's benefits rather than Shirley.

Respondent contends that *Harmes* is substantively indistinguishable from the present case. Petitioner distinguishes *Harmes* arguing that in this case the parties were validly divorced. Louise concedes

that she was served with summons and did nothing to prevent the default divorce from being entered against her. She explained this conduct by stating that she was left in Grand Cayman penniless and unable to return to the United States to secure the services of an attorney to represent her in the dissolution proceeding.

Petitioner does not quarrel with the decision of the supreme court in *Harmes*. It reasons, however, that vacating an erroneous or voidable judgment does not render it void from its inception. To the contrary, the judgment was in full force and effect on the date of Carl's death and remained so until Louise acted to set it aside by appropriate supplemental proceedings. Petitioner concludes that irrespective of whatever effect the vacatur has as between Carl and Louise, it does not serve to alter the relationship between Louise and petitioner as of the date of Carl's death.

■■ ■ While we agree that there is a valid and clear distinction between a void and a voidable judgment, we cannot agree with the petitioner that the substantive effect of an order vacating a voidable decree is substantively different in effect from an order which is void from its inception. As was stated in *Orrway Motor Service, Inc. v. Illinois Commerce Com.* (1976), 40 Ill. App. 3d 869, 873, 353 N.E.2d 253, 256:

> " 'The words "void" and "voidable" do not denote different degrees of faultiness in judgments, but are a classification based on the evidence. If an inspection of the record proper furnished the facts showing that the court acted without jurisdiction, the judgment is void, and may be collaterally attacked. If, on the other hand, the record does not show this jurisdictional infirmity, or does not furnish the evidence of nullity, or if it shows or recites jurisdictional facts which are untrue, the judgment is voidable. The attack upon it, however, in such a case, must be direct, for the purpose of establishing by other evidence the untruthfulness of the record. When this is done, it is as void as any judgment which the record shows was rendered without jurisdiction. *** A void judgment must show from an inspection of its own record that it is void, while a voidable judgment shows from its record that it is good, and it will remain good until proven void, in a suit brought for that purpose.' "

As this passage makes clear, irrespective of whether a judgment is void or voidable, once established, a voidable judgment is just as void and without effect as any judgment which the record shows was rendered without jurisdiction. Black's Law Dictionary defines the word "vacate" as follows: "[t]o annul; to set aside; to cancel or rescind. To

render an act void; as, to vacate an entry of record, or a judgment." (Black's Law Dictionary 1388 (5th ed. 1979).) Thus, it is stated that if a judgment or decree of divorce is vacated or annulled, the marital rights, obligations, and status of the parties are revived and restored. The vacation of the decree places the parties in the status in which they were before the divorce. Where the action to vacate is not brought until after the death of one of the divorced spouses, the annulment of the divorce decree involves property rights only. (24 Am. Jur. 2d *Divorce & Separation* sec. 466 (1983).) Among those property rights which are considered to be subject to a subsequent proceeding involving a determination of the validity of a prior divorce are potential death benefits under an applicable State's workers' compensation law. *Rivieccio v. Bothan* (1946), 27 Cal. 2d 621, 165 P.2d 677; *Lucas v. Lucas* (1953), 258 Ala. 515, 64 So. 2d 70; 24 Am. Jur. 2d *Divorce & Separation* sec. 494 (1983).

While we recognize that there is also authority to the contrary (*Deremiah v. Powers-Thompson Construction Co.* (1955), 125 Ind. App. 662, 129 N.E.2d 425), we conclude that this represents a minority view (see *United States Fidelity & Guaranty Co. v. Dunbar* (1965), 112 Ga. App. 102, 143 S.E.2d 663) and has been characterized in a subsequent Indiana Appellate Court case as an example of a "whimsical and unjust" result (*Sam Winer & Co. v. Spelts* (1976), 169 Ind. App. 392, 348 N.E.2d 670).

Respondent argues that petitioner is making an impermissible collateral attack upon the dissolution proceedings which it has no standing to contest. While it may be true that petitioner had no standing to intervene in the dissolution proceeding and oppose respondent's motion to vacate the dissolution judgment (*Bernero v. Bernero* (1936), 363 Ill. 328, 2 N.E.2d 317; *In re Marriage of Perkinson* (1986), 147 Ill. App. 3d 692, 498 N.E.2d 319), petitioner would certainly be entitled to collaterally attack a judgment in a subsequent proceeding if it could be shown that it was entered by a court without jurisdiction or where jurisdiction was conferred or the order procured by fraud or duress (*People v. Kline* (1980), 80 Ill. App. 3d 66, 399 N.E.2d 353).

■ A trial court has the power to vacate a decree of divorce subsequent to the death of a party. Upon a sufficient showing that a divorce decree was wrongfully entered, the subsequent death of a party does not prevent redress of the error (*Collins v. Collins* (1958), 14 Ill. 2d 178, 151 N.E.2d 813; *Harris v. Harris* (1977), 45 Ill. App. 3d 820, 360 N.E.2d 113), and supplemental proceedings are an appropriate manner in which to seek correction of such error. (*Collins v. Collins* (1958), 14 Ill. 2d 178, 151 N.E.2d 813.) Here the parties concede that

the trial court had jurisdiction to vacate the dissolution proceedings, and no claim is made that the trial court's order was procured by fraud or duress. Accordingly, we believe petitioner has not established a valid basis upon which a collateral attack of the dissolution proceeding can be made.

■ In sum, we conclude that the Commission's determination that Louise was Carl's widow on the date of his death on the basis that a subsequent order vacating the dissolution decree rendered the original decree nugatory and returned the parties to the status they held on the date of decedent's death was not erroneous.

■ Petitioner next contends that the trial court erred in concluding that the maximum rate of compensation payable to Louise was equal to 66⅔% of decedent's average weekly wage rate. We agree. The trial court accepted the Commission's determination that decedent's salary for the previous year totalled $28,565.98. This calculation was not used by the Commission to determine the payable benefits, however, because it would have resulted in an average weekly wage rate in excess of the maximum payable as of the date of decedent's death under section 8(b)(4) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.8(b)(4)). That section provides that in death cases subsequent to July 1, 1977, the maximum weekly compensation rate in death cases shall be 133⅓% of the State's average weekly wage. For the period July 15, 1983, to January 14, 1984, the maximum benefit under the applicable schedule was $456.33. This is the amount which the Commission properly awarded. Thus, the trial court's remand to the Commission was in error.

■ ■ Petitioner's final contention is that the arbitrator erred in allowing Louise to testify, over objection, that nothing unusual occurred in the marital relationship in the spring of 1983 and that she assumed decedent was returning to Waukegan to work for petitioner as was his custom at that time of year. Petitioner claims that this conflicts with the sworn affidavit Louise filed in the divorce proceeding stating that decedent informed her prior to leaving Grand Cayman that he intended to file for a divorce upon his return to the United States. While Louise testified at the hearing that she did not consider it unusual for decedent to have returned to Waukegan in 1983, a statement which arguably contradicts her affidavit filed in the supplemental circuit court proceedings, this statement cannot be characterized as a violation of the Dead Man's Act (Ill. Rev. Stat. 1985, ch. 110, par. 8—201 (formerly Ill. Rev. Stat. 1979, ch. 51, par. 2)) because the statement does not relate to an event or conversation taking place in the presence of the decedent. In any event, contrary to petitioner's

122

contention, no objection was raised before the arbitrator, and any claim of error is waived. Finally, this issue could not possibly have had any bearing upon the matters now before this court because while Louise's motivation and potential knowledge that a divorce would be sought may have had a bearing on her petition to vacate the divorce decree, it is irrelevant in the compensation proceeding, in the absence of a claim of fraud, to the purely legal determination of her status as decedent's widow.

For the foregoing reasons, the judgment of the circuit court confirming the Commission's order determining Louise to be decedent's lawful widow is affirmed. That portion of the order remanding to the Commission for a recalculation of benefits is reversed, and the order of the Commission awarding benefits is reinstated.

Affirmed in part, reversed in part, Commission order reinstated.

BARRY, P.J., and KASSERMAN, WOODWARD, and McNAMARA, JJ., concur.