No. 3--06--0848

Filed May 27, 2008

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

| | | |
|---|---|---|
| *In re* PARENTAGE of: G. E. M. | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Minor, | ) | Will County, Illinois, |
| | ) | |
| (Renee M., | ) | |
| | ) | |
| Petitioner-Appellee, | ) | No. 01–F–247 |
| | ) | |
| and | ) | |
| | ) | |
| Louis D., | ) | Honorable Robert J. Baron, Susan T. |
| | ) | O'Leary, and Robert P. Brummund |
| Respondent-Appellant.) | ) | Judges, Presiding. |

JUSTICE WRIGHT delivered the opinion of the court:

Petitioner-appellee Renee M. is the mother of G.E.M., a minor child born on June 22, 1995. Mother's close friend, Richard C., voluntarily acknowledged paternity of the child at the hospital and the child's birth certificate named him the father and gave the child Richard's surname. Shortly after the child's birth, mother filed a parentage action in DuPage County, Illinois, against Richard, the voluntary father. The DuPage County court entered a judgment of paternity against the voluntary father that determined, among other issues, the amount of child support and provided for visitation between father and son. In 2000, mother requested the DuPage County judge to set aside the judgment of parentage against the voluntary father. The

trial court granted her request and vacated "any judgments for child support" entered against Richard. The court order added "all prior orders of parentage are hereby vacated, too."

A year later, mother filed a petition to determine the existence of a father/child relationship against respondent-appellant Louis D. in Will County, Illinois. Respondent filed a motion to dismiss the case pursuant to section 2-619(a) of the Code of Civil Procedure (735 ILCS 5/2-619(a) (West 2006)), which the trial judge denied. The court entered a judgment of parentage against respondent based upon court-ordered DNA testing results. Respondent appeals the denial of his motion to dismiss and the judgment of parentage entered against him. We reverse the trial court's ruling.

BACKGROUND

G.E.M., formerly known as G.E.C., was born at Northwestern Memorial Hospital on June 22, 1995, to petitioner Renee M., the mother of the child. Mother acknowledges relationships with three men at or near the time of the child's conception and birth. Two of these men provided emotional support to mother with their presence at the hospital where the child was born. The third man, respondent, was not present at the hospital. However, mother stated in her deposition that she informed respondent of the birth. In her discovery deposition, mother said that "there was a doubt in [her] mind as to which man, Louis, Richard, or Al, was the father of the child."

The baby was born prematurely with serious medical complications developing immediately after the birth. At the time of the child's birth, mother and Richard prepared and signed an "Electronic Birth Certificate Worksheet" (worksheet) as required by law for the filing of the State of Illinois "Certificate of Live Birth." In the worksheet submitted for the birth

2

certificate, mother and Richard acknowledged that Richard was the father of the child. Both signed and verified the worksheet. The worksheet was also signed by a person designated to be the "certifier/attendant" at the hospital. The birth certificate named the child G.E.C. (using Richard's surname).

On January 8, 1996, mother filed a "Verified Petition to Determine the Existence of the Father and Child Relationship" against Richard C., the voluntary father, in the circuit court of DuPage County, Illinois. Mother sought a determination of parentage, an award of child support, payment of her pregnancy and delivery costs, medical insurance coverage for the child, life insurance as security for support and educational expenses, contribution toward a trust fund to pay the child's post-high-school education expenses, and attorneys fees. Mother did not identify respondent as either a possible putative father of the child or notify respondent of the parentage proceedings occurring in the circuit court of DuPage County. In paragraph 4 of that verified petition, mother stated, "The natural father of the minor child is Richard S. C[ ]." The voluntary father appeared in court during these proceedings, with counsel, and agreed that he should be determined to be the child's natural father.

On June 27, 1996, the court entered an "Agreed Order [of] Parentage, Custody and Interim Support" declaring Richard C. to be the father of the child, awarding sole custody to mother, and requiring the voluntary father to pay interim child support at a rate of $70 per week beginning immediately. On September 26, 1996, the court entered a subsequent agreed order resolving "all other issues" including the payment of pregnancy and delivery expenses, medical insurance, payment of uncovered medical expenses, contributions to post-high-school education expenses, and increasing the child support amount to $100 per week.

3

On December 11, 1997, mother filed a petition for rule to show cause against Richard for violating the terms of the agreed order by failing to pay for medical expenses, life insurance coverage, and child support. The court entered an order for a rule to show cause to issue. On January 26, 1998, with both parties present, the court found the voluntary father to be in indirect civil contempt for failure to provide proof of life insurance coverage and for failure to pay child support. The court set a hearing date on the medical reimbursement issue and the "possible discharge of said obligations in Richard's pending bankruptcy proceeding." On October 28, 1998, the DuPage County court transferred the case to "inactive status" pending review of the final bankruptcy order. Neither mother nor the voluntary father requested any DNA testing throughout these proceedings to verify that the voluntary father was, in fact, the biological father of this child.

Nearly two years later, on May 9, 2000, mother filed a standardized *pro se* petition to "terminate my child support and/or maintenance for the reason stated below: Due to DNA testing [Richard C.] is not the father of [the child]." Mother also requested permission to amend G.E.M.'s birth certificate to reflect her own last name. Mother prepared a Notice of Motion for Richard, the legal father, to appear in court on this motion. On May 24, 2000, mother also sent an *ex parte* letter to Judge Dudgeon, the DuPage County judge, stating,

> "Dear Judge Dudgeon,
>
> It is in the best interest of a five year old little boy to hear this
> emergency motion on Friday, May 26, 2000 at 8:30 a.m. This motion
> is to vacate court order dated September 2, 1998.
>
> Petitioning the court to hear the validity of the DNA testing

4

done by Identigene on October 28, 1999. The court will be provided with the chain of custody and sample handling and AABB Government guidelines.

Also, as you know Richard is a hard person to contact, as luck will have it, he will be available this holiday weekend to spend time with [G.E.M.] and address the court on Friday May 26, 2000 at 8:30 am. He will be returning to Kansas on May 31, 2000.

We pray that this court will vacate the order, relinquishing Richard from all his financial obligations but not obligations of the heart. In turn we can take this over to Will County Court System and enable [G.E.M.] his right to know who he really is."

Mother also prepared an "Emergency Notice of Motion" to "Vacate order dated September 2, 1998." The only petition pending at this time was the *pro se* motion filed on May 9, 2000. Richard did not appear on May 26, 2000, but the court, on its own motion, entered an order that included the following language:

"[Renee M.] appearing to present the parties' agreement vacating the Court's finding of parentage and declaring that the Respondent, [Richard C.], is not the biological father of the minor child, [G.E.M.], due notice having been given and the court otherwise advised in the premises; *** a) Ms. Brenda Carroll is appointed as the representative of the minor child *** b) the parties and the child's representative shall appear in the court on June 28, 2000 at 8:30 a.m. for status."

5

The court order also ordered the parties to submit to parentage testing at LabCorp and required that the County of DuPage pay for the costs of the testing.

Richard, the voluntary father, filed a general appearance on May 26, 2000, but never appeared in court or filed a responsive pleading in this post-judgment matter. Mother represented herself, *pro se.* Neither mother nor the voluntary father filed any additional motions or amendments to the pending motion. On June 28, 2000, mother and the child's representative appeared in court but Richard was not present. The court entered an order on that date requiring the child's representative to send the LabCorp results to Richard by mail; setting a hearing date on mother's motion for August 10, 2000, at 8:30 a.m.; and, "If [Richard] has not responded by that date, default shall enter against him." The record does not show Richard ever received formal written notice and proof of mailing regarding the court hearing on August 10, 2000. The order entered on August 10, 2000, stated, "[Richard] not appearing but having been notified by the guardian ad litem and acknowledging to [Renee M.] that he was aware of [the] court date and had received correspondence from the GAL."

The court further ordered:

> "1) That there being no objection, due notice having been given and the test results for parentage indicating that [Richard] is excluded as the father for [the child], that [Richard] is declared not to be the father of [the child]; 2) That the motion being previously filed and no objection being given, that [the child's] name shall be henceforth changed to [G.E.M.]; 3) That the Clerk of the Circuit Court shall reduce any child support arrearages on [Richard's] account to a zero balance and the child support account in this case shall be closed and they shall

6

end [Richard's] child support obligation; 4) That any judgments entered against [Richard] for child support will be vacated; all prior orders of parentage are hereby vacated, too."

The case was then closed in DuPage County.

On May 25, 2001, almost a year after the case was closed in DuPage County, mother filed a petition to determine the existence of a father/child relationship in the Will County circuit court against respondent Louis D. G.E.M. was six years old at this time. In this petition, mother also requested prospective and retroactive child support, health insurance coverage for G.E.M., payment of a share of uninsured medical expenses for G.E.M., life insurance coverage naming G.E.M. as the beneficiary, reservation of payment of post-high-school education expenses, and attorneys fees.

Respondent filed a motion to dismiss the Will County action pursuant to specific sections of the Code of Civil Procedure. 735 ILCS 5/2-619 (West 2006). In his motion to dismiss, respondent contended that, since mother and the voluntary father both signed an acknowledgment of paternity naming Richard as G.E.M.'s father, that issue had already been resolved and was binding on those parties. In further support of his position, respondent stated that both mother and the voluntary father made a judicial declaration of parentage by consenting to the entry of the agreed orders in the DuPage County court proceedings. Finally, respondent argued that the DuPage County order vacating the judgment of parentage against Richard was void. Respondent filed amended and supplemental motions to dismiss clarifying the issues.

The trial court denied respondent's motion to dismiss and all amended and supplemental motions to dismiss. The court entered a judgment of paternity against respondent on February 3,

7

2005. On October 6, 2006, the court entered an additional order setting forth respondent's financial obligations toward this child. Respondent filed a timely notice of appeal. On appeal, respondent argues that the trial court erred in denying his motions to dismiss and entering the judgment of paternity against him. Additional facts, as necessary, will be discussed in the analysis below.

## ISSUES

Respondent argues that the trial court erred in denying his motions to dismiss the pending cause of action because paternity of this child has been established by the previous voluntary acknowledgments of paternity. First, respondent argues the voluntary acknowledgments were not properly vacated by the court since mother did not file a section 2-1401 petition. Second, respondent claims the DuPage County order vacating the order of parentage, support and other issues was void due to lack of subject matter jurisdiction. Third, respondent contends that G.E.M.'s mother lacked standing to request vacating Richard's parental rights. Consequently, respondent claims Richard's paternity order is still in effect and bars the current paternity action against him.

Conversely, mother asserts that the doctrine of merger bars this court from reviewing the denial of respondent's motion to dismiss since those issues merged into the issues and affirmative defenses raised in trial and the final judgment. Next, mother argues respondent could not collaterally attack the DuPage County order because the DuPage County court had continuing subject matter jurisdiction over Richard's paternity obligations. Third, she asserts the Will County action of paternity against the biological father, respondent, is not barred by *res judicata* because the parties in the Will County action differ from those named in the DuPage County action.

8

Finally, mother contends equity and the best interests of the child dictate naming respondent as the child's father.

## ANALYSIS

### I. Voluntary Acknowledgments of Paternity Operate as Judgments

At issue is whether this natural mother can rely on the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/1 *et seq.* (West 2006)) to compel respondent to pay child support for her child when she knowingly acknowledged Richard C. as the father and later agreed to a court order of support against Richard. Importantly, Richard has not personally challenged the legal presumption of his paternity in any court.

Richard, a close friend, attended the birth of the child. In her discovery deposition, mother said that "there was a doubt in [her] mind as to which man, Louis, Richard, or Al, was the father of the child." However, at the hospital, Richard and mother completed the electronic birth certificate worksheet required pursuant to the Vital Records Act (410 ILCS 535/12 (West 2006)). According to the exhibits, hospital personnel certified this documentation. The resulting birth certificate identified Richard as G.E.M.'s father and revealed the child shared Richard's last name. In this case, mother and Richard were not married. At common law, a putative father was not legally obligated to support his child born out of wedlock. *People ex rel. Cantazaro v. Centrone*, 48 Ill. App. 2d 484, 485 (1964). However, today a father's obligation to pay support, as well as other parental rights and obligations, are governed by the Parentage Act (750 ILCS 45/1 *et seq.* (West 2006)) regardless of whether the parties were married. We are called upon to interpret the Act in order to determine the person responsible for this child's support. Statutory construction involves a question of law requiring a *de novo* review. *In re Marriage of Kates*, 198 Ill. 2d 156, 163

9

(2001).

Parental obligations encompass many considerations unrelated to financial support, such as the obligation to insure the physical, mental, and emotional well-being of the child.. *J.S.A. v. M.H.*, 224 Ill. 2d 182, 198 (2007). Our supreme court recently recognized these considerations by emphasizing the language of the Parentage Act. The court stated,

>"In enacting the Parentage Act, the General Assembly established a 'statutory mechanism that serves to legally establish parent and child relationships in Illinois.' [Citation.] *** [T]he purpose of this statutory enactment is to further the public policy of Illinois to 'recognize[ ] the right of every child to the physical, mental, emotional and monetary support of his or her parents under this Act.'[Citations.] *** As such, the Parentage Act defines the term 'parent and child relationship' as 'the legal relationship existing between a child and his natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties and obligations.'[Citation.]
>
>*** Accordingly, under the Parentage Act, a father-child relationship may be established in a number of ways: by presumption [citation], by consent [citation], or by judicial determination [citation]." *J.S.A.*, 224 Ill. 2d at 198.

The Parentage Act creates a presumption of paternity arising from a "voluntary acknowledgment of paternity." Pursuant to section 5(a)(4) of the Act, a man is presumed to be the natural father of a child if "he and the child's natural mother have signed an acknowledgment

10

of parentage \*\*\* in accordance with section 12 of the Vital Records Act." 750 ILCS 45/5(a)(4) (West 2006). Unless this acknowledgment is timely rescinded, the presumption is conclusive. 750 ILCS 45/5(b) (West 2006).

The Act allows that fatherhood is not always created by pure genetics. Consent is as legally binding on a parent as a DNA determination when that unconditional acceptance of the role of parent is voluntarily accepted for purposes of an adoption or a voluntary acceptance of paternity. Here, both mother and Richard agreed to name Richard as G.E.M.'s legal father at birth. Neither Richard nor mother timely rescinded that agreement or alleged that their respective acknowledgments of paternity were based on duress, fraud, or mistake of fact as required by statute. This acknowledgment creates a legal presumption which can not be easily cast aside when the responsibilities of parenting become difficult.

Further, a voluntary acknowledgment of parentage that is witnessed according to the requirements of Section 12 of the Vital Records Act operates with the full force and effect of a judgment entered under the Illinois Parentage Act. 750 ILCS 45/6 (West 2006).

The Vital Records Act (410 ILCS 535/1 *et seq.* (West 2006)) provides in pertinent part:

> "535/12. Live births; place of registration.
>
> \* \* \*
>
> (4) Unless otherwise provided in this Act, if the mother was not married to the father of the child at either the time of conception or the time of birth, the name of the father shall be entered on the child's birth certificate only if the mother and the person to be named as the father have

11

signed an acknowledgment of parentage in accordance with subsection (5).

\*\*\*

(5) Upon the birth of a child to an unmarried woman, \*\*\* the institution at the time of birth and the local registrar or county clerk after the birth shall do the following:

(a) Provide (i) an opportunity for the child's mother and father to sign an acknowledgment of parentage \*\*\*. The signing and witnessing of the acknowledgment of parentage \*\*\* conclusively establishes a parent and child relationship in accordance with Sections 5 and 6 of the Illinois Parentage Act of 1984." 410 ILCS 535/12(4), (5) (West 2006).

In the pending case, mother and Richard voluntarily established a parent-child relationship between Richard and G.E.M. by preparing the "electronic birth certificate worksheet" at the hospital pursuant to the Vital Records Act. The record shows this acknowledgment of parentage was certified by a hospital representative. Consequently, we conclude this admission of paternity operated as conclusively as a judicial determination based on evidence or a judgment establishing paternity pursuant to section 45/6 of the Illinois Parentage Act of 1984. 750 ILCS 45/6 (West 2006).

In spite of her voluntary acknowledgment, mother now wishes to designate another person as her child's father. When asked why she and Richard completed DNA testing of Richard in 1999, mother responded,

"There was always a question. Richard signed on [G.E.M.'s] birth certificate

12

thinking [the baby] was going to die. We both did. There was all these court proceedings going on. Richard was responsible for the next 23 years through college. He was taking my child out of state. There was always, always, always a doubt in both of our minds."

However, in spite of mother's change of heart, statutory procedures control whether an acknowledgment of paternity may be rescinded or whether the presumption arising from the acknowledgment remains in full force and effect. 750 ILCS 45/5 (West 2006).

Section 45/5(b) of the Act states that a party may rescind his or her voluntary acknowledgment of parentage within 60 days of its signing. 750 ILCS 45/5(b) (West 2006). Specifically, the Act states:

"A presumption under section [45] (a)(3) or (a)(4) is conclusive, unless the acknowledgment of parentage is rescinded *** upon the earlier of 60 days after the date the acknowledgment of parentage is signed, or the date of an administrative or judicial proceeding relating to the child (including a proceeding to establish a support order) in which the signatory is a party." 750 ILCS 45/5(b) (West 2006).

The presumption arising from a voluntary acknowledgment becomes conclusive if not rescinded before the earlier of two dates provided by the Act. 750 ILCS 45/5(b)(1), (b)(2) (West 2006); *People ex rel. Dept. of Public Aid v. Smith*, 212 Ill. 2d 389, 405 (2004). After the 60-day deadline for rescission has passed, a presumed father may only challenge the acknowledgment in the limited circumstances where he alleges fraud, duress, or material mistake of fact. 750 ILCS 45/6(d) (West 2006); *Illinois Dept. of Public Aid ex rel. Howard v. Graham*, 328 Ill. App. 3d 433, 435 (2002); *Smith,* 212 Ill. 2d at 397. Richard, the voluntary father, has not challenged his

13

presumption of paternity. Mother now wishes to pursue support from another person and by necessity had to first extinguish Richard's status as G.E.M.'s father.

In *Smith*, our supreme court explained that the presumption from a voluntary acknowledgment of paternity under the statute is conclusive and "cannot be overcome by any additional evidence or argument." *Smith*, 212 Ill. 2d at 405. A man who voluntarily acknowledges paternity can later challenge the *voluntariness* of the acknowledgment if he can show that it was procured by fraud, duress, or material mistake of fact. However, the Parentage Act does not allow him to avoid the conclusive presumption of paternity with contrary evidence, such as the DNA results in this case. *Smith*, 212 Ill. 2d at 405. The Illinois Supreme Court stated,

> "Clearly, it would be unreasonable to allow a man in this position to undo his voluntary acknowledgment years later on the basis of DNA results, when his paternity was based not on a mere marital presumption that he was the child's father but on the conscious decision to accept the legal responsibility of being the child's father." *Smith*, 212 Ill. 2d at 406.

In this case, the voluntary acknowledgments of paternity were not rescinded by the parties within 60 days or challenged based on fraud, duress, or mistake.

Further, mother relied on Richard's status as father when she filed a "Verified Petition to Determine the Existence of the Father and Child Relationship" in DuPage County on January 8, 1996. Mother verified Richard was the father of her child in this petition filed approximately seven months after birth. Similarly, in his verified response, Richard, with an attorney, admitted parentage and agreed to the entry of an "Agreed Order of Parentage, Custody, and Interim Support" in DuPage County on June 27, 1996. This proceeding occurred more than 60 days after

14

the parties acknowledged paternity in the birth certificate worksheet, and provided Richard and mother a second opportunity to confirm paternity through DNA testing. Neither mother nor Richard requested the DNA testing. As a result, the court entered orders outlining Richard's legal privileges and obligations to the child, both financially and with regard to visitation. Once paternity is established, the rights to a parent-child relationship are constitutionally protected and should not be lightly set aside. A parent may willingly surrender parental rights for purposes of an adoptive proceeding after meeting strict statutory criteria. 750 ILCS 50/10 (West 2006). Also, the state can involuntarily terminate parental rights if an abusive or neglectful parent refuses to surrender parental rights and the State makes a proper showing of abuse or neglect of the child. 705 ILCS 405/2-29 (West 2006). Fortunately, this is not a neglect or abuse situation. Richard has been a good father to this child and has only encountered some difficulty in paying support. However, findings of parental unfitness may not be determined based on financial considerations alone. 705 ILCS 405/2-27(1) (West 2006).

In this case, it was not the State - and not Richard - but the child's biological mother who requested the court to release Richard from his financial obligations as father so that she could pursue another person for support contributions for her child's needs. Interestingly, mother only desires Richard to be relieved of the monetary burdens in favor of imposing those duties on respondent. Mother stated in her letter to the DuPage County court that matters of the heart will be unaffected. However, no court has authority to bifurcate parental responsibilities between affairs of the heart and financial affairs.

In parentage cases, the trial court has no inherent powers to deviate from the statute. Parental rights can be surrendered by the parent in limited situations or terminated by the state

under special circumstances. However, there is not any statutory authority for a court to *vacate* or simply set aside parental rights at the request of a parent. The trial court's authority is limited to the exercise of the powers conferred upon the court by the Act. *J.S.A.*, 224 Ill. 2d at 221. No court can arbitrarily vacate a judgment of paternity, created by statute or judicial determination, and allow a parent to abandon the duties necessary for the well-being of their child, no matter how inconvenient those obligations may be for one or both parents.

Mother argued that the "Agreed Order [of] Parentage, Custody and Interim Support" declaring Richard to be the father of the child operated as a consent judgment which can later be modified with the consent of both parties. *Burchett v. Goncher*, 235 Ill. App.3d 1091, 1094 (1991). We agree the terms of the order can be modified, but the underlying premise of paternity cannot be challenged after two years except, by means of a section 2-1401 petition.

Additionally, mother's argument fails because there is no evidence that the DuPage County order vacating Richard's parentage of G.E.M. was entered by agreement. The Will County trial judge addressed that issue during the hearing on respondent's motion to dismiss. The court stated,

> "I have looked at the DuPage order. It clearly is not an agreed order. *** So the consent judgment argument is not well-based. *** [Richard] was not there. He did not sign off on it. It's not agreed to. It indicates on its face that he didn't appear."

The Will County trial court also reviewed the DuPage County order entered prior to entry of the order vacating Richard's paternity which stated Richard would be defaulted if he failed to appear or respond to mother's motion. The trial court correctly found the DuPage County order vacating Richard's paternity was not by agreement of the parties.

16

We conclude the acknowledgment of paternity was not rescinded within the statutory time frame. We also determine the status as a parent may not be vacated by agreement of the parties. Parental status may only be relieved by operation of law as a result of fraud, duress, or mistake or based on omission of duties arising to the level of abuse or neglect.

We now turn to whether the respondent's motion to dismiss established another person had status as the child's father and barred mother's action to compel respondent to contribute to the financial needs of the young boy.

## II. Motion to Dismiss

Respondent filed a motion to dismiss mother's petition to declare him the father of G.E.M., pursuant to 735 ILCS 5/2-619 (West 2006), on grounds that the parentage of G.E.M. had already been established, and improperly vacated, by the DuPage County circuit court. The Will County court conducted a lengthy hearing on respondent's pretrial motion. The court denied respondent's motion to dismiss. However, the record does not contain the judge's oral pronouncement of the ruling. Additionally, the written order does not include any written findings.

Mother contends when the trial court denied respondent's motions to dismiss, the issues from that motion merged into the trial on the merits and the subsequent judgment. Mother cites the case of *In re J.M.*, 245 Ill. App. 3d 909 (1993), for the premise that a motion to dismiss is analogous to a motion for summary judgment under the rules of Civil Procedure. Mother claims that, after the trial court denied the motion to dismiss, the issues raised in that pretrial motion merged into the issues presented at trial. Consequently, mother contends respondent is precluded from challenging the denial of his section 2-619 motion to dismiss in this appeal.

17

Respondent counters this argument stating that an exception to the doctrine of merger exists when the issues presented in the prior motion are questions of law, rather than fact, and those questions of law were not presented to the court again at trial. *Battles v. LaSalle Nat. Bank*, 240 Ill. App. 3d 550, 558 (1992). Respondent contends that 735 ILCS 5/2-619(e) grants an exception to the doctrine of merger. Section 2-619(e) states, "Pleading over after denial by the court of a motion under this Section is not a waiver of any error in the decision denying the motion." 735 ILCS 5/2-619(e) (West 2006).

A transcript from the first hearing on respondent's motions to dismiss held before Judge Baron is helpful. After Judge Baron denied respondent's motion to dismiss, respondent stated he would be raising similar affirmative defenses in his responsive pleadings to the complaint "just to protect the record." Respondent's attorney stated that he did not expect the court to re-adjudicate the same issues raised as affirmative defenses. The court concurred stating, "I understand. You think that's necessary to protect your appeal rights, it's appropriate that you do so." Respondent's attorney further clarified that the court was denying his statutory argument in the motion to dismiss, and the court concurred.

Clearly, respondent preserved his right to appeal the trial court's denial of his motions to dismiss based on legal issues rather than questions of fact. Therefore, these issues fall within the exception to the merger doctrine. The denial of the motions to dismiss are properly before this court.

Now that we have addressed the fact that respondent may properly request our review of the denial of his motion to dismiss, we turn to the contentions of error regarding the circuit court's ruling on the motion to dismiss. Pursuant to section 5/2-619(a)(4) and (9) of the Code of Civil

18

Procedure (735 ILCS 5/2-619(a)(4),(9) (West 2006)), a defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds: (4) that the cause of action is barred by a prior judgment; and (9) that the claim asserted against the defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim. Pursuant to these subsections, respondent filed his timely motions to dismiss.

Respondent alleged the Will county case was barred by the DuPage County judgment naming Richard the father of G.E.M. Also, respondent argued the lawsuit was barred by other affirmative matters being the voluntary acknowledgments of paternity, made by mother and Richard when preparing the birth certificate, that operates as a judgment pursuant to the Illinois Parentage Act of 1984 (750 ILCS 45/5(a)(4) (West 2006)) and the Vital Records Act (410 ILCS 535/12 (West 2006)). However, both parties contest the other's standing to challenge the DuPage County proceedings that vacated the order of parentage, custody, child support and other issues regarding Richard as G.E.M.'s father. We consider the issue of standing as to each party separately.

### III. Standing

Where standing is challenged by way of a motion to dismiss, a court must accept as true all well-pleaded facts in the plaintiff's complaint and all inferences that can reasonably be drawn in the plaintiff's favor. *International Union of Operating Engineers, Local 148, AFL-CIO v. Illinois Dept. of Employment Sec.*, 215 Ill. 2d 37, 45 (2005). A court's disposition of a section 2-619 motion on lack of standing presents a question of law which we review *de novo*. *International Union*, 215 Ill. 2d at 45.

19

In his motion to dismiss, respondent collaterally attacked the DuPage order vacating Richard's paternity and obligations on grounds that the order was void for lack of subject matter jurisdiction. Mother asserts respondent may not collaterally attack the DuPage order because he was not a party to that lawsuit and, therefore, is without standing. Respondent contends that he has "standing" to collaterally challenge the void DuPage County order because a void order can be attacked at any time in any court.

It is well settled that a "judgment, order or decree entered by a court which lacks jurisdiction of the parties or of the subject matter, or which lacks the inherent power to make or enter the particular order involved, is void, and may be attacked at any time in any court, either directly or collaterally." *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 103 (2002); see also *Ashlock v. Ashlock*, 360 Ill. 115, 120 (1935); *George W. Kennedy Construction Company, Inc. v. Industrial Commission,* 152 Ill. App.3d 114, 120 (1987); *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 312-313 (1986).

The law in Illinois does not place restrictions on a collateral attack of a void judgment. We reject mother's contention that respondent did not have standing to collaterally attack the DuPage County order. We conclude respondent had standing to challenge an order he claims was void from the inception by means of his section 2-619 motion to dismiss.

Next, we consider respondent's challenge to mother's standing. Respondent claims mother did not have standing to request the DuPage County court to vacate Richard's paternity, child support and other parental obligations. The permanent consequences of voluntary acknowledgments of parentage extend to both the mother who gives birth and the man who knowingly assumes the role of father. By voluntarily acknowledging paternity, both mother and

20

Richard accepted the legal consequences of the statutory presumption of paternity and waived their option to request DNA testing. Both have standing to challenge their *own* acknowledgment of paternity upon the earlier of 60 days after the signing of the acknowledgment of parentage, or the date of an administrative or judicial proceeding related to the child, including a proceeding to establish support, in which the signatory is a party. 750 ILCS 45/5(b) (West 2006).

However, in *Donath v. Buckley*, 319 Ill. App. 3d 83 (2001), we rejected a mother's assertion of her standing to challenge a father's paternity based on section 45/7(b-5) of the Parentage Act (705 ILCS 45/7(b-5)(West, 2004)). Justice McDade stated in *Donath*, "Unless [father] seeks to deny the relationship, [mother] is legally bound by the judicial declaration of paternity that she and [father] secured by agreement and consent." *Donath*, 319 Ill. App. 3d at 87. Justice McDade continued, "Section 7(b) of the Illinois Parentage Act governs the circumstances under which a natural mother may challenge paternity. The statute of limitations for her challenge is found in 750 ILCS 45/8(3) (West 2006), providing that the action must be brought no later than two years after the petitioner obtains knowledge of the relevant facts." *Donath*, 319 Ill. App. 3d at 87.

In this case, by acknowledging Richard's paternity at birth, and later relying on that acknowledgment in the DuPage County court order entered on June 27, 1996, mother waived DNA testing with a contemporaneous understanding that DNA could disclose Richard was not the natural father. In fact, mother agrees she was well aware that there was always a real possibility that Richard was not the likely father. Mother's petition to terminate Richard's paternity came long after the two-year statute of limitations period passed and it was not timely.

Similarly, a presumed father has standing to raise his own challenge to the

acknowledgment of paternity based on fraud, duress, or material mistake of fact. *Illinois Dept. of Public Aid v. Smith*, 212 Ill. 2d 389, 405 (2004). The method for a father to raise such a challenge is to file a "proper motion under section 2-1401 of the Civil Code." *Illinois Dept. of Public Aid ex rel. Howard v. Graham*, 328 Ill. App. 3d 433, 435-436 (2002); *Smith*, 212 Ill. 2d at 399. Richard has not personally challenged his decision to step forward as the child's legal father by filing his own section 2-1401 petition claiming fraud, duress or material mistake of fact. He has not indicated that he no longer wishes to serve in the capacity as parent. These issues must be advanced by the *father* or his attorney. Mother cannot represent father's legal interests by bringing them to the attention of the court, under the pretext of consent, when that is not evident of record in this case.

Richard filed a general entry of appearance in the postjudgment proceedings, but he did not file a responsive pleading, appear in court, or approve the order vacating his parental rights. He advised the GAL that he was aware of the proceedings but, curiously, there is nothing in the record confirming he agreed with the proposed outcome. Richard did not initiate the request for court-ordered DNA testing. The DuPage County court ordered DNA testing *sua sponte* after reviewing mother's letter. Mother was the only person questioning the status of Richard as G.E.M.'s father, and we agree with respondent that she did not have standing to do so.

IV. DuPage County Order Did Not Affect The Conclusive Presumption

Created By the Acknowledgment of Paternity

Respondent argues that the original determination of paternity was voluntarily agreed to by the parties, approved by the court, and remains binding on mother. Consequently, respondent challenges the obligations of paternity imposed on him by the Will County court, because the

DuPage County court previously named another person as G.E.M.'s father based on a verified parentage petition filed by the same mother. Mother's position urges that the DuPage County court's order not only vacated prior orders of the court but extended to negate the effect of Richard's voluntary acknowledgment of paternity at the time of the birth of the child. We are not convinced the DuPage County order affected the original acknowledgment of paternity since the judge's order was limited to "any judgments *** for child support" and "all prior orders of parentage." The presumption of paternity in this case originally arose by statute and not from an order of the court. Arguably, in order to prevail, mother was required to file a verified section 2-1401 petition to set aside the agreed order of paternity entered by the court and then address the presumption of paternity formulating the basis for the birth certificate in this case. She has done neither.

In the case at bar, the original presumption of paternity became conclusive and final 60 days after the voluntary acknowledgments of paternity were signed on June 22, 1995, by mother and Richard. Later, the parties consented to an agreed order of parentage in the DuPage County circuit court which was entered on June 27, 1996.

The parties did not challenge the voluntary acknowledgments of paternity within 60 days of June 22, 1995. Moreover, neither parent filed an action to challenge the agreed order within 30 days of June 27, 1996. Our collateral review of the DuPage County order granting mother's request to set aside the 1996 paternity order, more than two years after the order was entered, is *de novo. People v. Vincent*, 226 Ill.2d 1, 26 (2007).

The well-established rule, applicable here, is that a court loses jurisdiction 30 days following the entry of a final order. *People v. Price*, 364 Ill. App. 3d 543, 547 (2006). In *Price*,

23

364 Ill. App. 3d at 545, the appellate court held that the trial court lost jurisdiction to consider the defendant's untimely motion. Even though the parties in *Price* proceeded to hearing on the defendant's motion without objection, the State's failure to object did not give the trial court the authority to proceed. *Price*, 364 Ill. App. 3d at 547. Lack of subject matter jurisdiction is not subject to waiver and cannot be cured through consent of the parties. *Price*, 364 Ill. App. 3d at 547 (citing *People v. Flowers,* 208 Ill. 2d 291, 303 (2003)); see also *Lowenthal v. McDonald*, 367 Ill. App. 3d 919, 924 (2006).

To vacate a court order after 30 days, all requirements of the section 2-1401 must be properly pled in a petition filed with the court within the two-year limitation period. *Smith v. Airoom*, *Inc.*, 114 Ill. 2d 209, 220-221 (1986); 735 ILCS 5/2-1401(c) (West 2006). The ambit of section 2-1401 relief must not be overbroadened by the principles of equity such that an ordered concept of justice becomes diluted. *Smith v. Airoom*, 114 Ill. 2d at 227. There exists a strong judicial policy favoring the finality and stability of judgments. *Malek by Malek v. Lederle Laboratories*, 152 Ill. App. 3d 493, 497 (1987). We find these principles favoring the stability of court orders particularly poignant in the context of parentage determinations that become part of a child's personal history and sense of self.

The requisites pursuant to section 2-1401 are stringent. *Cruz v. Columbus-Cuneo-Cabrini Medical Center*, 264 Ill. App. 3d 633, 636 (1994). The petitioner must affirmatively set forth factual allegations supporting each of the elements. *Airoom*, 114 Ill. 2d at 220-221. In order to be legally sufficient, a request for relief under section 2-1401, based on matters outside the trial record, must be supported by the sworn allegations of the party or parties having personal knowledge of the relevant facts. *Storcz v. O'Donnell*, 256 Ill. App.3d 1064, 1069 (1993). These allegations must be set forth either by a verified petition or by an attached affidavit. *Storcz,* 256 Ill. App. 3d at 1069; see also *Mitchell v. Seidler*, 68 Ill.App.3d 478, 482 (1979). A petition which

24

is not verified and not supported by affidavit is insufficient as a matter of law. *Storcz*, 256 Ill. App. 3d at 1069.

Even if we ignore mother's lack of standing to challenge Richard's paternity, mother's written request to terminate child support fell far below the required standards of a section 2-1401 petition. Mother filed a *pro se* standardized "Motion to Terminate My Child Support and/or Maintenance" on May 9, 2000, when the child was almost five years old. Mother also sent an *ex parte* letter to the judge stating that, in fairness to her son, he should learn the identity of his father and "enable G.E.M. his right to know who he really is." Mother requested the DuPage County judge to vacate the judgment of parentage entered against Richard based only on these equitable principles. Similarly, section 8(a)(3) of the Act provides:

> "An action to declare the non-existence of the parent and child relationship
> brought under subsection (b) of Section 7 of this Act shall be barred if brought
> later than two years after the petitioner obtains knowledge of relevant facts." 750
> ILCS 45/8(a)(3) (West 2006).

Mother submitted her unverified letter to the DuPage court on May 9, 2000. Obviously, mother did not bring the DuPage action within 2 years of the consent judgment entered in DuPage County on June 27, 1996.

A mother may compel a person adjudicated to be the father of her child, or a person who has voluntarily acknowledged paternity of her child, to pay support and honor other statutory obligations. 750 ILCS 45/14 (West 2006). However, this case does not involve determining the existence of paternity. This matter involves releasing a father from the agreed and adjudicated obligations of paternity at the mother's request because a more suitable father might be found.

25

We agree a mother may file a petition and name anyone she suspects to be the biological father *before* paternity is established. However, once mother dictates who should be named as the child's father and he agrees, a mother then loses the ability to name anyone else as the father, because the voluntary acknowledgment operates as if it were a final judgment entered by a court of law after 60 days. Furthermore, in this case, mother confirmed her previous acknowledgment of paternity a second time by consenting to the agreed parentage order in 1996.

When the DuPage County court entered the order vacating Richard's paternity five years after G.E.M.'s birth, a biological father had not been ascertained by DNA testing. Further, a biological father had not stepped forward to assert that his own rights had been improperly disregarded or to attempt to terminate Richard's rights in favor of the his own interests. Such circumstances might cause Richard to surrender his rights and consent to an adoption by respondent. However, such is not the case.

Sadly, the DuPage County court's order that vacated the order of parentage and support against Richard left the child without any father legally obligated to support him financially or emotionally. The record shows Richard has been an active father in this child's life. Richard has found it difficult to meet the financial obligations of support, but this is not a basis to end a parent-child relationship, especially by default.

Here, both mother and Richard had knowledge at the time of G.E.M.'s birth that one of three men could have been the father. In spite of this knowledge, both parties chose to sign the requisite forms for the birth certificate acknowledging Richard as the father of G.E.M. Both ratified this acknowledgment when they entered into an "Agreed Order [of] Parentage, Custody and Interim Support" on June 27, 1996.

26

Since there were questions about paternity at the time of the child's birth, either party could have asked the court to enter an order requiring DNA testing at that time, but they did not. Then, on December 11, 1997, after Richard failed to pay the court-ordered child support, mother turned to the court and requested contempt proceedings against Richard. When contempt failed to resolve the support difficulties, mother decided to explore other avenues. As mother stated in her deposition, "We said let's go get a DNA test and know for sure. This way we're all - - our minds are at ease." DNA testing could put their minds at ease, but it does relieve Richard of his parental obligations because he is conclusively legally presumed to be the father.

Mother successfully convinced the Will County judge that *res judicata* based on the DuPage County order did not bar the Will County action because respondent was not a party to the DuPage County action. We agree with mother's interpretation of the doctrine of *res judicata* but reject her conclusion that it applies here. The doctrine of *collateral estoppel*, not *res judicata*, determines whether this mother can prevail in a second paternity action against a second putative father, respondent, in this case.

Mother was a party to both proceedings, in DuPage County and Will County, and she may not relitigate issues previously decided in her favor in DuPage County. In the decision of *In re Paternity of Rogers*, 297 Ill. App. 3d 750 (1998), the court held the doctrine of *collateral estoppel* barred [the father] from relitigating the issue of parentage in a parentage action filed seven years after dissolution proceedings already determined the parental obligations of the father. In this case, the doctrine of *collateral estoppel* bars mother from claiming another man should be substituted as G.E.M.'s legal father based on hindsight created by the passage of time.

In this case, mother and Richard entered into a contract with society to parent this child

27

together.  Here, mother is bound by her decision to choose Richard to act as father to her child. by naming him in the first paternity action and consenting to that judgment.  The 60-day deadline for a mother to rescind her acknowledgment of paternity has passed.  Mother does not allege fraud, duress, or material mistake of fact to challenge the presumption of paternity arising from her mutual acknowledgment. 750 ILCS 45/6(d) (West 2006).  Similarly, absent some showing of fraud, duress, or material mistake of fact, the 1996 consent judgment in DuPage County is binding on this mother.  Since this mother did not trigger the jurisdiction of the court by filing a proper section 2-1401 petition to revisit the validity of the 1996 parentage order, we conclude that the DuPage court had no authority to vacate the 1996 order.  Therefore, this DuPage County order was void and did not vacate Richard's parental rights.

Respondent argued, pursuant to Section 9 of Article VI of the Illinois Constitution, jurisdiction extends to only justiciable matters.  *Belleville Toyota, Inc. v Toyota Motor Sales U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002).  We agree.  A litigant must file a petition framing a justiciable matter for the trial court to invoke jurisdiction.  *Belleville Toyota*, 199 Ill. 2d at 334 (citing *Ligon v. Williams*, 264 Ill. App. 3d 701 (1994)).

Generally, a "justiciable matter " is a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests.  *Belleville Toyota*, 199 Ill. 2d at 335.  Since paternity had been decided years earlier by the DuPage County court shortly after the child's birth, the Will County court should have dismissed the cause of action against respondent because there was no justiciable matter remaining regarding the paternity of this child.

28

CONCLUSION

The presumption arising from the voluntary acknowledgments at birth remains intact and operates as a judgment binding on both parents. The judicial order by the DuPage County court naming Richard the father of G.E.M. was not challenged by mother until four years after the entry of the order and was not timely. Further, Richard's paternity cannot be extinguished by this mother's request alone. The DuPage court erroneously failed to require mother to establish the necessary factual basis to contest the agreed parentage order with a verified section 2-1401 petition. Mother's previous testimony, admitting she had doubts regarding Richard's biological paternity from the day her son was born, may predict the outcome of any challenge she might raise to Richard's paternity based on fraud, duress, or material mistake of fact.

The DuPage County order vacating Richard's parentage of G.E.M. was void for lack of subject matter jurisdiction. The Will County circuit court had no subject matter jurisdiction to revisit or re-determine the existence of a father and child relationship for a child who already had a legal father. There was, therefore, no justiciable matter remaining as to the paternity of the child in this case. For those reasons, mother is precluded from bringing this action against respondent. The Will County court erred in denying the motion to dismiss. The order denying respondent's motion to dismiss is reversed. We reverse the judgment declaring respondent to be the father of G.E.M. and vacate all other orders related to that determination and direct the trial court to dismiss the cause of action.

Reversed and remanded.

McDADE, PJ., and SCHMIDT, J., concurring.

29